*In re* Turner.

---

No. 19,858

*In re* MARY TURNER, *Petitioner*.

SYLLABUS BY THE COURT.

1. HABEAS CORPUS—*Delinquent and Incorrigible Girl—Committed to Industrial School for Girls—Proceeding of Juvenile Court—Regular and Valid.* A girl fifteen years old found by the probate judge, sitting as the juvenile court, to be delinquent and incorrigible, to associate knowingly with immoral persons, to be growing up in idleness and crime and violating the city ordinances by remaining out until late hours at night, was ordered committed to the Industrial School for Girls at Beloit. Her parents appeared without service

of process on them, but the child was taken into custody by the probation officer upon a warrant based upon a complaint verified on information and belief. A hearing followed, and the testimony abundantly supported the findings of the court. *Held,* that such child is not entitled to a writ of habeas corpus because of failure to verify the complaint positively.

2. SAME—*Purpose of the Juvenile Court.* The juvenile court act (Gen. Stat. 1909, §§ 5099-5113) has for its object not the punishment of juvenile offenders for misconduct, criminal or otherwise, but their removal from the path of temptation and their direction into the paths of rectitude by preventive and corrective means.

3. SAME. The act is an assertion of the state's power as *parens patriæ* and its right to exercise proper parental control over those of its minor citizens who are disposed to go wrong.

4. SAME—*No Constitutional Rights Invaded.* In the charge, apprehension, investigation and order involved herein, the child was not denied any of her constitutional rights.

5. SAME—*No Stigma Attaches by Commitment to the Industrial School for Girls.* By express declaration of the statute in question, and by the settled decisions applicable to similar enactments, all such proceedings, orders and judgments are deemed to have been taken and done in the exercise of the state's parental power, and neither the stigma nor the penalty for crime can be held to accompany such proceedings or order.

Original proceeding in habeas corpus. Opinion filed January 9, 1915. Petitioner remanded.

*W. E. Atchison,* of Topeka, for the plaintiff.

*Edwin D. McKeever, Leonard S. Ferry, Thomas F. Doran,* and *John S. Dean,* all of Topeka, for the defendant.

The opinion of the court was delivered by

WEST, J.: Mary Turner, a girl fifteen years of age, by her father and next friend, alleges that she is restrained of her liberty by certain officers of Shawnee county, acting under color of authority from the probate court, who are unlawfully holding and imprisoning her "solely under and by virtue of an insufficient complaint and void warrant, and under a void order and commitment committing said Mary

Turner to the Industrial School for Girls at Beloit";
that she was arrested upon a warrant issued upon a
complaint which charged no crime warranting her
arrest and was not positively verified; that no sum-
mons was issued to her or either of her parents, neither
of whom voluntarily appeared; that the evidence taken
upon the hearing was insufficient to show probable
cause of the commission of any crime to warrant her
commitment to the school named.   The exhibits at-
tached to the petition together with the return of the
matron of the county jail show that a probation officer
filed a complaint verified on information and belief
that Mary Turner did on or about the——day of the
——month of 1914 violate the laws of the state and
the ordinances of the city of Topeka, and did then
and there unlawfully remain out late at night; that
she is incorrigible and knowingly associates with
thieves, and vicious and immoral persons, and is grow-
ing up in idleness and crime.   Upon this complaint a
warrant was issued by the judge of. the juvenile court
commanding the matron to arrest Mary Turner and
bring her before the judge at his office, then and there
to abide the order of the court in the premises.   After
the hearing a final order was made setting forth that
it was found by the court "that the above named
child was a delinquent child and is incorrigible; that
said child knowingly associates with immoral persons,
and is growing up in idleness and crime; that said
child violated the ordinances of the city of Topeka by
carrying what is commonly known as knucks."   Also,
"that said child knowingly and willfully violated the
ordinances of the city of Topeka by remaining out
until late hours of the night."   And it was ordered that
she be committed and delivered to the superintendent
of the Industrial School for Girls at Beloit, there to be
safely kept under the direction and control of the au-
thorities having charge of such institution until dis-
charged according to law.   In the paper called "Com-
mitment to Industrial Schools" it is recited that the

petition and complaint coming on to be heard Mary Turner and her parents and the probation officer were present in court and it was found that due and legal notice had been given to the probation officer, "Mr. and Mrs. Pete Turner having appeared voluntarily upon service of the warrant on said child."

The transcript of the evidence shows abundant ground for the finding already mentioned touching the delinquency and conduct of the child. The probation officer testified that he informed the judge "that she would not be here for trial if we did not take her into custody." The copy of the warrant attached to the petition accords with the allegation of the latter, that the girl was imprisoned and deprived of her liberty solely upon a warrant based upon a complaint verified on information and belief.

It must be taken as true, therefore, that while the parents appeared without service of process upon them, the daughter was taken into custody by the probation officer on the strength of the warrant based upon the complaint, both of which have already been described. It must also be taken as true that the intention of the officers is to place the child in the industrial school as indicated.

Section 8680 of the General Statutes of 1909, enacted in 1889, provides that probate courts shall have power to commit to the school in question: "*Third,* any girl under sixteen years of age who is incorrigible and habitually disregards the commands of her father, mother or guardian, and who leads a vagrant life, or resorts to immoral places or practices, and neglects or refuses to perform labor suitable to her years and condition, and to attend school." The only other grounds applicable are liability to punishment by imprisonment under any existing law of the state. Section 2782 makes it a misdemeanor punishable by fine or imprisonment or both to carry on one's person knucks in a concealed manner. But there is no evidence whatever that Mary Turner made any attempt

at concealment of the knucks carried by her, hence the only ground of the section in question which applies is the third already quoted. This section further provides that before such girl shall be committed the probate court shall cause a complaint to be filed setting forth the charges complained of in writing, and before he shall investigate such charges shall give at least five days' notice to all persons interested in the filing of such complaint.

Section 1 of the juvenile court act passed in 1905 (Laws 1905, ch. 190, Gen. Stat. 1909, §§ 5099-5113) provides that the probate judge shall be in charge of the juvenile court, which shall have authority among other things, to issue all process necessary in any case "the same as justices of the peace are authorized to do in misdemeanors." All writs and process are to be served by the probation officer. Section 2 defines a "delinquent child" as one who, among other things, is incorrigible or knowingly associates with thieves, vicious or immoral persons, or is growing up in idleness or crime. Section 3 provides that any probation officer may, without warrant or other process, at any time until the final disposition of the case of any child over whom the court shall have jurisdiction, take the child placed in his care by the court and bring the child before the court, "or the court may issue a warrant for the arrest of any such child; and the court may thereupon proceed to sentence or make such other disposition of the case as he may deem best." Section 4 authorizes a petition in writing when filed to be verified upon information and belief. Section 5 requires that unless the parties voluntarily appear in court, it shall issue summons requiring the child and the persons having custody thereof to appear. If the person so summoned fails, without reasonable cause, to appear and abide the order of the court or to bring the child, he may be proceeded against for contempt, or a warrant be issued against such person "or against the child itself." Section 12 provides for an appeal from the

order of commitment upon the demand of the child's parent, guardian, custodian, or any relation within the third degree of kinship. Section 14 places all punishments and penalties imposed by law upon persons for the commission of offenses against the laws of the state or ordinances of a city by delinquent children under sixteen within the discretion of the juvenile court. Section 15 expressly provides: "And in no case shall any proceedings, order or judgment of the juvenile court in cases coming within the purview of this act, be deemed or held to import a criminal act on the part of any child; but all proceedings, orders and judgments shall be deemed to have been taken and done in the exercise of the parental power of the state."

At first blush the claim of the petitioner, that his daughter is unlawfully restrained and was unlawfully arrested, appeals strongly to one's sense of liberty, but a close examination into the matter discloses that the juvenile court, while a modern institution, is provided for in numerous acts which have been before the courts for interpretation. In a general way, it may be said that these statutes, instead of attempting to punish juvenile offenders for misconduct, criminal or otherwise, try to remove them from the path of temptation, and by preventive and corrective means seek to direct them in the paths of rectitude. It is an assertion upon the part of the state of its right to exercise its power as *parens patriæ* for the welfare of such of its minor citizens as are deprived of proper parental control and oversight, and are disposed to go wrong. These words, meaning "Father of his country," were applied originally to the king, and are used to designate the state, referring to its sovereign power of guardianship over persons under disability. When this country achieved its independence, the prerogatives of the crown devolved upon the people of the states. "The sovereign will is made known to us by legislative enactment. The state, as a sovereign, is the *parens*

*In re* Turner.

*patriæ.* . . . The courts of the United States can not exercise any equity powers, except those conferred by acts of congress, and those judicial powers which the high court of chancery in England, acting under its judicial capacity as a court of equity, possessed and exercised, at the time of the formation of the constitution of the United States." (*Fontain v. Ravenel,* 58 U. S. 369, 384, 15 L. Ed. 80.) In the case cited Mr. Chief Justice Taney, in a concurring opinion, said:

"And the chancery jurisdiction of the courts of the United States, as granted by the constitution, extends only to cases over which the court of chancery had jurisdiction, in its judicial character as a court of equity. The wide discretionary power which the chancellor of England exercised over infants, lunatics, or idiots, or charities, has not been conferred. These prerogative powers, which belong to the sovereign as *parens patriæ,* remain with the States." (p. 393.)

While the old Spartan theory that the child and the citizen are for the state has been reversed by our civilization, which regards the state as an institution for the good of the child and the citizen, still the state as *parens patriæ* may exercise over the child parental care and authority in order that he may receive the highest good from the state and achieve the best results for himself thus guarded and directed in youth. As said in *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 79 N. W. 422:

"Every statute which is designed to give protection, care, and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered." (p. 665.)

The authorities are nearly all to the effect that statutes of this kind are parental rather than criminal, so

that a jury may not be demanded as a matter of constitutional right. This, together with the express declaration of the closing section, that all proceedings, orders and judgments shall be deemed to have been taken and done in the exercise of the parental power of the state, makes it clear that neither the stigma nor the penalty of crime should be held to accompany the proceeding and order in this case.

The following are among the numerous authorities touching the interpretation and effect of similar statutes: *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 79 N. W. 422; *Commonwealth v. Fisher, Appellant,* 213 Pa. St. 48, 62 Atl. 198, 5 Ann. Cas. 92, and Note, 96; *Ex parte Januszewski,* 196 Fed. 123; *In re Sharp,* 15 Idaho, 120, 96 Pac. 563, 18 L. R. A., n. s., 886, and Note; *Lindsey v. Lindsey,* 257 Ill. 328, 100 N. E. 892, 45 L. R. A., n. s., 908, and Note; *Hunt v. Wayne Circuit Judges,* 142 Mich. 93, 105 N. W. 531, 7 Ann. Cas. 821, and Note, 831, 3 L. R. A., n. s., 564, and Note; *Pugh v. Bowden,* 54 Fla. 302, 45 South. 499, 14 Ann. Cas. 816, and Note, 819; 1 Wharton's Criminal Law, 11th ed., §§ 368-375.

The state had the same right to bring Mary Turner before the juvenile court that her parents had, and when once there by proper compulsion of either sort of parental authority the court had jurisdiction to proceed as it did.

Finding in the record no infringement upon her legal and constitutional rights the petition for her discharge is denied.