Argued November 18, affirmed December 23, 1924, rehearing denied, February 10, 1925.

# M. L. HILLS ET AL. *v.* WALTER M. PIERCE, GOVERNOR, ET AL.

(231 Pac. 652.)

**Infants—Statute Authorizing Commitment of Delinquent Child to Industrial School not Criminal.**

1. Statute authorizing commitment of delinquent child to Industrial School by Court of Domestic Relations is not criminal; purpose being to provide for child's welfare as state ward.

**Infants—Commonwealth may Take Custody of Delinquent or Dependent Child from Parents.**

2. Right to parental control is natural, but not inalienable, and commonwealth, under proper regulations, may take custody of delinquent or dependent child from its parents and transfer guardianship to state agencies, whenever deemed for common welfare of child and state in judgment of competent tribunal.

**Infants—Purposes of Criminal and Children's Courts Distinguished.**

3. Criminal courts are established to determine guilt or innocence of, and pronounce penalty for, crime, while purpose of children's court is to protect.

---

1. See 14 R. C. L. 273.
2. Parent's right to custody of child, see note in 2 Am. St. Rep. 183. See, also, 20 R. C. L. 595; 14 R. C. L. 271.
3. See 14 R. C. L. 277.

**Infants—Statutes Affecting Juvenile Offenders Liberally Construed in Their Favor.**

4. Statutes affecting juvenile offenders should be liberally construed in favor of their welfare, Section 9818, Or. L.

**Infants—Jurisdiction of Court of Domestic Relations Stated.**

5. Court of Domestic Relations for Multnomah County has original and exclusive jurisdiction of all cases, arising in such county, involving care, control, and disposition of dependent and delinquent children, as defined by Sections 9801, 9802, Or. L.

**Habeas Corpus—Only Clearly Void Judgment Committing Delinquent Child to Industrial School Subject to Collateral Attack.**

6. Attack on validity of judgment of Court of Domestic Relations committing delinquent child to Industrial School, by petition for writ of *habeas corpus*, is collateral attack of civil nature, which is limited to cases in which judgment or sentence is clearly void and not erroneous.

**Judgment—Merely Erroneous or Irregular Judgments not Subject to Collateral Attack.**

7. Judgments or orders, which are merely erroneous or irregular, are valid until reversed or set aside in direct proceeding for such purpose, and are not subject to collateral attack.

**Habeas Corpus—Juvenile Court Judgment Committing Delinquent Child to Industrial School cannot be Collaterally Attacked for Errors of Law or Irregularity in Practice.**

8. Court of domestic relations of Multnomah County, having jurisdiction of subject matter and of parties to litigation when it entered judgment committing delinquent child to Industrial School, its judgment cannot be impeached collaterally, on petition for writ of *habeas corpus,* for errors of law or irregularity in practice.

**Habeas Corpus—Court will not Consider Legality or Justice of Mandate Under Which Petitioner is Held, if not Defective in Substance.**

9. Entirely void judgment restraining one of liberty may be assailed collaterally in *habeas corpus* proceedings; but court, in ordering writ, will not inquire into legality or justice of mandate under which petitioner is held, if not defective in matter of substance.

**Habeas Corpus — Cannot be Used in Place of Writ of Error or Appeal.**

10. Writ of *habeas corpus* is high prerogative writ, designed to effect speedy release of citizen, but is not intended to usurp powers

---

4. See 25 R. C. L. 1077; 14 R. C. L. 278.
6. See 15 R. C. L. 839, 874.
7. See 15 R. C. L. 835.
8. Juvenile court proceedings as reviewable by writ of *habeas corpus,* see notes in Ann. Cas. 1918D, 751, 754.
9. See 12 R. C. L. 1192; 15 R. C. L. 874.
10. See 12 R. C. L. 1192.

of appellate courts or interfere with and review proceedings of other courts, and cannot be used in place of writ of error or appeal.

**Habeas Corpus—Prisoner not Entitled to Discharge for Defects in Indictment, if Enough Appears on Face of Indictment to Charge Him With Crime.**

11. Though indictment under which prisoner is held is defective in failing to state facts constituting crime, he is not entitled to discharge on *habeas corpus*, if enough appears on face of indictment to charge him with crime.

**Infants — Matters Necessary to be Shown by Order Committing Delinquent Child to Industrial School Stated.**

12. Judgments of Court of Domestic Relations involving guardianship of delinquent child should show facts on which court's jurisdiction rested, and order committing such child to Industrial School should show title of court and cause, filing of petition stating facts constituting delinquency, court's order directing service of process on child's legal custodian, service of notice, or waiver thereof, facts found at hearing constituting delinquency, and violation of specified law, or that child is incorrigible or otherwise delinquent within statute.

**Infants—Order Committing Delinquent Child to Industrial School not Void for Defects in Form.**

13. Order committing delinquent child to Industrial School is not rendered void by defects in form, and is good against collateral attack.

**Infants — Finding of Dependency Because of Parents' Neglect or Cruelty Unnecessary to Commit Delinquent Child to Industrial School.**

14. To commit to Industrial School, child charged with delinquency, by reason of theft and immorality, under Section 9802, Or. L., finding of dependency because of parents' neglect or cruelty, as provided by Section 9801, is unnecessary.

**Infants—Child Need not be Arraigned on Charge of Delinquency nor Particulars of Charge Set Out to Warrant Commitment to Industrial School.**

15. To commit child to Industrial School as delinquent, within Section 9802, Or. L., by reason of theft and immorality, she need not be arraigned as criminal, and petition need not set out particulars as to charge of stealing.

**Infants—Remedies of Parents Injured by Order Committing Delinquent Child to Industrial School Stated.**

16. Parents injured by order of Court of Domestic Relations committing child to Industrial School as delinquent should appeal, and have case heard *de novo* in Circuit Court, under Section 9804, Or. L.,

---

11. See 12 R. C. L. 1201.

as amended by Laws of 1923, Chapter 216, or apply to court of domestic relations for order setting aside or modifying order of commitment.

See (1) 31 C. J. 1102.  (2) 31 C. J. 987.  (3,5) 31 C. J. 989. (4) 31 C. J. 1104.  (6) 29 C. J. 51, 52.  (7) 34 C. J. 555.  (8) 29 C. J. 52.  (9) 29 C. J. 53.  (10) 29 C. J. 6, 7, 19.  (11) 29 C. J. 41.  (12,14) 31 C. J. 1109 (1926 Anno.).  (13,15) 31 C. J. 1109.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. W. O. Sims.*

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. J. B. Hosford,* Assistant Attorney General, with an oral argument by *Mr. Hosford.*

BROWN, J.—This is an appeal from an order of the Circuit Court of Marion County, Oregon, in denying the writ and dismissing the petition in a *habeas corpus* proceeding instituted for the purpose of releasing a juvenile offender. The petitioners, through their attorney, challenge the regularity of the judgment rendered by the Court of Domestic Relations of the State of Oregon for Multnomah County. They assert that the record fails to show that the alleged juvenile offender was arraigned; that the petition fails to state facts constituting a crime; and, that it fails to find that the child's parents were incompetent.

On March 25, 1924, by an order of the Court of Domestic Relations of the State of Oregon for Multnomah County, based upon a petition, service of process and a hearing, one Ferne Hills, a minor

about seventeen years of age, was adjudged to be delinquent, in that she was immoral and was "guilty of stealing," and the court found that it was for the best interest of the child that she be committed to the Oregon State Industrial School for Girls.

1. The petitioners would have this court treat the case under consideration in accordance with the statute governing criminal procedure.

The statute under which the child was committed to the Industrial School is not criminal in its nature, and, in theory, this action was instituted, not to punish the child for a crime, but to provide for her welfare. Such statutes are not deemed criminal laws, nor is the procedure criminal procedure: 1 Bishop's Criminal Law (9 ed.), § 373-A; 1 Wharton's Criminal Law (11 ed.), §§ 364-375.

In the case of *State* v. *Dunn,* 53 Or. 304 (99 Pac. 278, 100 Pac. 258), this court said:

"The provisions governing the juvenile court, where children are brought before it, are clearly not intended to come within what is termed 'criminal procedure,' nor are the acts therein alluded to, as applied to children, crimes."

See *Juvenile Court of Shelby County et al.* v. *State ex rel. Humphrey,* 139 Tenn. 549 (201 S. W. 771, Ann. Cas. 1918D, 752); *United States* v. *Behrendsohn,* 197 Fed. 953; *In re Turner,* 94 Kan. 115 (145 Pac. 871, Ann. Cas. 1916E, 1022); *Marlowe* v. *Commonwealth,* 142 Ky. 106 (133 S. W. 1137); *Mill* v. *Brown,* 31 Utah, 473 (88 Pac. 609, 120 Am. St. Rep. 935, and note).

The juvenile court is a part of a system of dealing with delinquent and dependent children which treats the children not as criminals, but as wards of the state, to be protected, and saves them from the

stigma of a conviction for crime: 1 Wharton's Criminal Law, p. 469, note 2.  In our state, and in many other jurisdictions, the aim in providing a court to hear complaints against juvenile offenders is to separate from the atmosphere of criminality the delinquent and dependent children charged with violation of law.

2. The legal representative of the petitioner in the instant case argued earnestly that the arm of the state had invaded the home of the parents and snatched the child from parental custody.

The tendency of the decisions, and especially in more recent cases, is to hold that the right to parental control is a natural, but not an inalienable, right, and that the commonwealth, in all cases of delinquent and dependent children, may, under proper regulations, take the custody of a delinquent or dependent child from its parents and transfer its guardianship to state agencies, whenever, in the judgment of a competent tribunal, such action is for the common welfare of the child and the state.  Such decisions are based upon legislation held to be constitutional.

3. Criminal courts are established to determine the guilt or innocence of a person accused of the commission of a crime, and to pronounce a penalty in the event he is found guilty.  On the other hand, the purpose of the children's court is not to convict or punish, but to protect: *In re Antonopulos,* 171 App. Div. 659 (157 N. Y. Supp. 589).

4. Statutes enacting legislation affecting juvenile offenders should be liberally construed in favor of the welfare of the infant: Or. L., § 9818; *State* v. *Dunn,* 53 Or. 304 (99 Pac. 278, 100 Pac. 258); *Foster* v. *Myers,* 59 Or. 549 (117 Pac. 806); 31 C. J. 1104.

"While the old Sparton theory that the child and the citizen are for the state has been reversed by our civilization, which regards the state as an institution for the good of the child and the citizen, still the state, as *parens patriae,* may exercise over the child parental care and authority in order that he may receive the highest good from the state and achieve the best results for himself thus guarded and directed in youth. As said in *Wisconsin Industrial School for Girls* v. *Clark County,* 103 Wis. 651 (79 N. W. 422): 'Every statute which is designed to give protection, care, and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered.'" *In re Turner,* 94 Kan. 115 145 Pac. 871, Ann. Cas. 1916E, 1022.)

5. The Court of Domestic Relations of the State of Oregon for Multnomah County has original and exclusive jurisdiction in all cases arising in that county involving the care, control, and disposition of dependent and delinquent children, as defined by our Code. "Child dependency" is defined by Section 9801, Oregon Laws. In the case at bar, the child is charged with delinquency. A "delinquent child," within the meaning of our statute, is thus defined:

" 'Child delinquency,' within the meaning of this act, shall be defined as follows: persons of either sex under the age of eighteen years who violate any law of the state, or any city or village ordinance; or persistently refuse to obey family discipline; or are persistently truant from school; or associate with criminals or reputed criminals; or are growing up in idleness and crime; or are found in any disorderly

house, bawdy-house, or house of ill fame; or are guilty of immoral conduct; or visit, patronize, or are found in any gaming house or in any place where any gaming device is or shall be operated, are hereby classed as delinquent children and shall be subject to the legal relations and provisions of the juvenile court law and other laws for the care and control of delinquents." Or. L., § 9802.

Section 9803 authorizes any reputable person having knowledge of the delinquency or dependency of a child to file a petition setting forth the facts, verified by affidavit. Section 9804, as amended by General Laws of Oregon 1923, Chapter 216, provides notice to the child and to the parents or persons having custody or control of the alleged dependent or delinquent child. Section 9811 provides:

"Whenever a child under the age of eighteen years is adjudged a delinquent child under the provisions of this act, such child shall be deemed a ward of the juvenile court, and the court may, in its discretion, retain jurisdiction and control of such child in accordance with the provisions of this act until he or she shall have arrived at the age of twenty-one years."

Section 9804, Oregon Laws, as amended by Chapter 216, General Laws of Oregon 1923, provides, among other things, that on the return of process the court shall proceed to hear and dispose of the case in a summary manner. It further provides for an appeal from the juvenile court to the Circuit Court, where the trial shall be *de novo* as provided by the statutes of the state for the trial of actions at law, and that an appeal may be taken from the judgment of the Circuit Court as in other cases.

6. By this *habeas corpus* proceeding, the petitioners attack the validity of the judgment of the Court of Domestic Relations committing the delin-

quent child to the Industrial School for Girls. This attack on the judgment of the court constitutes a collateral attack: 1 Bailey on Habeas Corpus, 85; 29 C. J. 51, and the many decisions under note 24.

A proceeding in *habeas corpus,* being a collateral attack of a civil nature to impeach the validity of the judgment of a court, is limited to cases in which the judgment or sentence attacked is clearly void and not erroneous: *Ex parte Reed,* 100 U. S. 13 (25 L. Ed. 538, see, also, Rose's U. S. Notes); *Ex parte Stacey,* 45 Or. 85 (75 Pac. 1060); *Ex parte Foster,* 69 Or. 319 (138 Pac. 849).

7. The following excerpt contains a statement of the general rule:

"Judgments or orders which are merely erroneous or irregular are valid until reversed or set aside in a direct proceeding for that purpose, and are not subject to collateral attack. * * Accordingly, where the trial court had jurisdiction of the offense and of the person of defendant, and power to render the particular judgment or sentence in proper cases, *habeas corpus* will not lie upon the ground of mere errors and irregularities in the judgment or sentence rendering it not void but only voidable." 29 C. J. 51, 52.

To like effect are *Barton* v. *Saunders,* 16 Or. 51 (16 Pac. 921, 8 Am. St. Rep. 261); *Ex parte Tice,* 32 Or. 179 (49 Pac. 1038); *Ex parte Stacey, supra; Ex parte Foster, supra.*

8. The Court of Domestic Relations of the State of Oregon for Multnomah County possessed jurisdiction of the subject matter of the litigation and of the parties thereto when it entered the judgment assailed. Hence, its judgment cannot be impeached collaterally for errors of law or irregularity in practice: *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362, 23 Am. St. Rep.

95, 11 L. R. A. 155); *Bobell* v. *Wagenaar,* 106 Or.
232 (210 Pac. 711); *Shaveland* v. *Shaveland,* 112 Or.
173, 228 Pac. 1090.

9. But, if the judgment under which one is re-
strained of his liberty is entirely void, it may be
assailed collaterally and *habeas corpus* is a proper
remedy. However, the court will not, in ordering a
writ of *habeas corpus,* inquire into the legality or
justice of the mandate under which the petitioner
is held, if it is not defective in matter of substance.
See authorities cited in *Ex parte Wessens,* 89 Or.
587 (175 Pac. 73).

In the case of *Barton* v. *Saunders, supra,* an ap-
peal was had for the purpose of reviewing a judg-
ment discharging the plaintiff from arrest in a
*habeas corpus* proceeding. As a ground upon which
to base the *habeas corpus* proceeding, it was urged,
among other things, that the affidavit upon which the
warrant was issued and served upon the petitioner
was defective, in that it did not state the facts con-
stituting the alleged fraud, but averred conclusions
of law only. In this case, Mr. Chief Justice LORD,
in rendering the opinion of the court (16 Or. 51, 54,
55, 16 Pac. 921, 8 Am. St. Rep. 261), quoted with ap-
proval the following principle announced by Mr.
Hurd in his work on Habeas Corpus:

" 'But,' says Mr. Hurd, 'a proceeding defective
for irregularity and one void for illegality may be
reversed upon error or *certiorari,* but it is the latter
defect only which gives authority to discharge on
*habeas corpus.'* Errors or irregularities which ren-
der proceedings voidable merely, the writ of *habeas
corpus* cannot reach, but only such defects in sub-
stance as renders the process or judgment absolutely
void. * * Where the matter is itself insufficient,
without reference to the manner of stating it, it goes

to the substance, but where it goes to the manner of stating it, the defect is merely formal.''

The foregoing case contains an instructive discussion as to the purpose of a *habeas corpus* proceeding.

10. The writ of *habeas corpus* is a high prerogative writ, designed for the purpose of effecting a speedy release of a subject or citizen: 15 Am. & Eng. Ency. of Law (2 ed.), 154, 155; 12 R. C. L., § 2, Habeas Corpus. Such a proceeding, however, is not intended to usurp the powers of appellate courts or to interfere and review the proceedings of other courts, neither can it be used in a place of a writ of error or an appeal: *Ex parte Foster, supra; Ex parte Stacey, supra;* 15 Am. & Eng. Ency. of Law (2 ed.), 144; 12 R. C. L., § 2, Habeas Corpus.

11. It is settled by abundant authority that although the indictment under which a prisoner is held in custody is defective in that it fails to state the facts constituting the crime, yet he is not entitled to his discharge upon *habeas corpus* if enough appear upon the face of the indictment to charge him with the crime. See note, 100 Am. St. Rep. 35; 12 R. C. L., p. 1190; see, also, authorities in note, 87 Am. St. Rep. 170.

The decisions of this court preclude us from issuing a writ of *habeas corpus* by reason of the alleged defects in the petition: *Ex parte Stacey, supra; Ex parte Foster, supra; In re Shaw,* 88 Or. 174 (171 Pac. 896).

12. The judgments issuing out of the Court of Domestic Relations involving the guardianship of a delinquent child should show the facts upon which the court's jurisdiction rested. An order of commitment in a case of child delinquency should show the title of the court and cause; the filing of petition contain-

ing a concise statement of the facts constituting the child's delinquency; and an order by the court directing the service of process upon the parents or other legal custodian of the child, if such there be. The order should show that notice was served, or that service of process was waived by the party's voluntarily appearing in court. It should also state the facts found at the hearing by the court, constituting the delinquency of the child involved; that there has been a violation of some specified law of the state or city, or that the child is incorrigible or otherwise within the meaning of a "delinquent child," as defined by statute.

13, 14. The record in the case at bar discloses defects as to form, but the order is not rendered void thereby and is good against a collateral attack.

The petitioner also asserts that the record is insufficient because the court failed to make a finding relating to the competency or incompetency of the parents.

If it had been charged that the child was a dependent child by reason of neglect or cruelty of the parents, as provided by Section 9801, then, in that event, such objection would be well taken. But, under our statute, where it is charged that the child is delinquent by reason of theft, and is immoral, a finding against the parents is unnecessary.

15. The child was not tried for the commission of a crime; hence, she was not arraigned at the bar of justice as a criminal, nor was it necessary for the petition to set out the particulars relating to the charge of "stealing." She was charged with delinquency.

16. If the petitioners felt themselves injured by the order made by the Court of Domestic Relations in the case at bar, they should have availed them-

selves of their right to appeal accorded by statute and to have the case heard *de novo* in the Circuit Court. Again, they had, and have, a right to apply to the Court of Domestic Relations for an order setting aside or modifying the order of commitment under which the child is detained at the Industrial School.

It follows that this case must be affirmed.

AFFIRMED. REHEARING DENIED.

Mr. Justice BURNETT did not participate in the hearing or consideration of this case.