Argued April 2; affirmed April 21, 1931

## Ex Parte PACKER
(298 P. 234)

*Tom Garland,* of Portland, for appellant.

*Chas. S. Cohn,* Deputy District Attorney, of Portland (Stanley Myers, District Attorney, Francis T. Wade, Deputy District Attorney, and Charles R. Spackman, Jr., all of Portland, on the brief), for respondent.

BROWN, J. We shall notice these assignments in the order above set out. In disposing of the first, it will be helpful to refer to the statute which touches upon the question.

Oregon Code 1930, § 33-501, provides:

"In this state male persons shall be deemed to have arrived at majority at the age of 21 years, and females at the age of 18 years, and thereafter shall have control of their own actions and business, have all the rights, and be subject to all the liabilities, of citizens of full age."

Section 33-502 thereof provides that:

"All female persons shall be deemed to have arrived at the age of majority upon their being married, according to law."

The petitioner relied upon the case of *State v. Eisen*, 53 Or. 297 (99 P. 282, 100 P. 257), wherein it was held that at the time of the acts contributing to the delinquency of the female, "she was old enough, under the statute, to contract marriage." It was further held that a female child 17 years of age, who married with the consent of her parents, would not fall under the juvenile law for the reason that upon marriage she loses her legal status as a child. It should be remembered that when this case was written, the law defined "delinquent children" to be certain "children under the age of 18 years." In order that the law might not be circumvented by the marriage of delinquent children, the Legislature, in 1919, enacted the following provision codified as Oregon Code 1930, § 33-620: .

" 'Child delinquency,' within the meaning of this act shall be defined as follows:

"Persons of either sex under the age of eighteen years who violate any law of the state, or any city or village ordinance; or persistently refuse to obey family

discipline; or are persistently truant from school; or associate with criminals or reputed criminals; or are growing up in idleness and crime; or are found in any disorderly house, bawdy house, or house of ill fame; or are guilty of immoral conduct * * * are hereby classed as delinquent children and shall be subject to the legal relations and provisions of the juvenile court law and other laws for the care and control of delinquents. * * *"

As authority for the definition of a "delinquent" person, the petitioner refers to the case of *State v. Gates,* 98 Or. 110 (193 P. 197). That case was a criminal prosecution, wherein the defendant was charged by indictment with the offense of contributing to the delinquency of a minor. From a review of the case we note, however, that neither the district attorney nor the court seemed to have knowledge of the fact that the definition of "delinquent child" had, prior thereto, been changed by legislative enactment.

The case of *In re Flores,* 119 Or. 550 (249 P. 1097), though not squarely in point, supports the view that, while the marriage of Vera Carlson has changed her legal status from that of a minor to a major, in that when she married she reached her majority for the purpose of succeeding to her legal rights as a major, and that most of her legal disabilities as a minor were thereby removed, yet it did not give her a new birth date from which to reckon her years. The following excerpt from a recent article in 8 Texas Law Review, p. 584, fully expresses the view of the writer:

"The wording of the act makes the age limit the controlling factor. The court's jurisdiction is, properly speaking, not over minors, but over *persons under a certain age.*"

■ The marriage of the petitioner herein did not exculpate her from the provisions of the act under con-

sideration. Nor did it obliterate the fact that she was a "person." Prior to her marriage, she had been adjudged a delinquent person. And, although by her marriage to Joe Packer she arrived at the age of majority and was therefore entitled to certain rights, her childhood, as a matter of law, for many purposes, having been wiped out thereby, yet she was a "person," and the act under which she is now restrained of her liberty applies to all persons under the age of 18 years; and, under and by virtue of this statute, the court had a lawful right to issue the further commitment for her detention in the charitable institution above named.

In *Richardson v. Browning,* 57 App. D. C. 186 (18 Fed. (2d), 1008), there appears a valuable discussion by the Court of Appeals of the District of Columbia involving the application of a statute using the terms "boy" and "girl" under the ages of 16 and 18 years respectively. This was a *habeas corpus* proceeding, and the petitioner was a married female under commitment. In summing up the case, the court said:

"We are unable to conclude that one incorrigible female child, of tender years, may be a proper object of restraint, by organized society, for her own physical and moral good, and another female child, of like years and likewise exposed to physical or moral downfall, may not, because she has contracted the marriage relation, be subject to such watchful care and custody on the part of the government. Public policy demands her emancipation, upon marriage, in respect to her property  *  *  *. But there is no such reason for her emancipation in matters affecting her moral and physical welfare, and the welfare of the organized society in which she dwells. The government has a right, and it is its duty, to see to it that, while she is of the tender years which are ordinarily denominated

as the years of her minority, she shall not live a life of delinquency or vice, or be exposed unnecessarily to moral or physical degradation.''

The case of *Ex parte Willis,* 30 Cal. App. 188 (157 P. 819), a *habeas corpus* proceeding, is squarely in point. In that case Clara Viola Willis, then 17 years of age, was adjudged to be a delinquent person, the particular charge being that she was guilty of vagrancy. The court ordered that she be placed under probation until she arrived at 21 years of age, or until further order of the court, and that she be permitted to reside with her mother under the supervision of a probationary officer. Some time after going to the home of her mother to reside she was married, and during the period of probation she also became 18 years of age. The return to the writ set out the following matter:

"That while a ward of the juvenile court, petitioner had, without the consent of the court, but with the consent of her mother, married one Willis  *  *  *. The particular ground upon which petitioner asks to be discharged is that the juvenile court has no jurisdiction over persons other than minors and unmarried infants.  *  *  *  The juvenile court is given jurisdiction over all 'persons' under the age of 21 years, irrespective of the question of their minority. We can find no authority which deprives the Legislature of the right to confer jurisdiction upon the juvenile court in the manner and form described by the act.''

In *McPherson v. Day,* 162 Iowa 251 (144 N. W. 4), the petitioner had been committed to the Industrial School for Girls as an incorrigible. She escaped and while at large attained her majority of 18 years, and, on the same day, was married. She was arrested, but sued out a writ of *habeas corpus.* In determining the issue the court held that her marriage did not affect her release, and "that her period of detention did not cease

until she was 21 years of age." It was, however, suggested that if her marriage had, in fact, resulted in her redemption, she should apply to the court for modification of the order of commitment. The writer of this opinion is in full accord with the policy therein suggested.

The case of *In re Lundy*, 82 Wash. 148 (143 P. 885, Ann. Cas. 1916E, 1007), involved a girl 17 years of age, who had married a man of full age. In that case, attention was called to a law of Washington which provides that "all females married to a person of full age shall be deemed and taken to be of full age": Rem. & Bal. Code, Wash., § 8744. In delivering its opinion, the Washington court held that, while this statute operated to remove the ordinary disabilities of minority, it did not affect the juvenile court law, which, by its terms, obviously was intended to operate according to the age of the individual.

*In re Hook*, 95 Vt. 497 (115 Atl. 730, 19 A. L. R. 610), is authority for the proposition that when the court once assumes control of a delinquent or a dependent child, its authority is not ousted by the marriage of the child.

In the case of *Ex parte Willis*, supra, it was held that a minor who has been adjudged by a juvenile court to be a delinquent person and placed on probation until she should arrive at the age of 21 years, and who, during her probation, has married without the consent of the court, is not entitled to discharge upon her marriage.

To like effect is *Stoker v. Gowans*, 45 Utah 556 (147 P. 911, Ann. Cas. 1916E, 1025). For a valuable note collating the authorities affecting jurisdiction of

juvenile courts over delinquents upon marriage, see 19 A. L. R. 616. On the same subject, see, also, Ann. Cas. 1916E, p. 1010, note.

The burden of authority is unquestionably to the effect that the jurisdiction of the juvenile court of a charge of delinquency against a person 18 years of age is not affected by the fact that she is married.

■ By her second assignment of error, in which she asserts that the commitments are defective in matters of substance, the petitioner assails the legality of the judgment of the Court of Domestic Relations by which she was committed to the House of the Good Shepherd. This court has held many times that a proceeding in *habeas corpus,* being a collateral attack of a civil nature, to impeach the legality of a judgment of the court, is limited to cases in which the judgment or sentence is clearly void, and not erroneous. See *Barton v. Saunders,* 16 Or. 51 (16 P. 921, 8 Am. St. Rep. 261) ; *Ex parte Stacey,* 45 Or. 85 (75 P. 1060) ; *Ex parte Foster,* 69 Or. 319 (138 P. 849) ; *Hills v. Pierce,* 113 Or. 386 (231 P. 652). In the case last cited we held that the order committing the delinquent child to the Industrial school was not rendered void by defect in form, and was good against collateral attack. That this doctrine has been pronounced by our court time and again, see *In re Application of Loundagin,* 129 Or. 652 (278 P. 950). See, also, *Kelley v. Myers,* 124 Or. 322 (263 P. 903, 56 A. L. R. 661). However, we do not find that the commitment in the case at bar is insufficient.

■ In her contention that the Juvenile Law of the State of Oregon is unconstitutional, the petitioner fails to point out wherein the law is defective, but counsel does, however, eloquently argue against the power and authority vested in the courts in the administration

thereof. As bearing upon the constitutionality of this statute, we make particular reference to the case of *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651 (79 N. W. 422), approved by this court in *Hills v. Pierce,* supra, and in which it was written:

"Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered."

See, also, *In re Turner,* 94 Kan. 115 (145 P. 871, Ann. Cas. 1916E, 1022).

The judgment appealed from will be affirmed.

BEAN, C. J., BELT and KELLY, JJ., concur.