Argued and submitted September 10, 1981, affirmed February 8, 1982

In the Matter of Peggy Jeanne
Williams, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY,
*Respondent,*

*v.*

WILLIAMS,
*Appellant.*

(No. 80-105, CA 19137)

640 P2d 675

Larry R. Roloff, Eugene, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

This is a juvenile court proceeding in which the Juvenile Department of Lane County (respondent) has charged Peggy Jeanne Williams (appellant), born October 26, 1963, with being a runaway, making a false statement in a marriage license application in violation of ORS 106.079 and possession of a fictitious Oregon driver's license in violation of ORS 482.610. The trial court found these allegations to be true and ordered appellant placed on six months supervised probation. She appeals.

Appellant had had difficulty getting along with her parents and, in June, 1979, moved out of her parental home, apparently with their permission. She secured employment at a Eugene coffee shop owned by Lee R. Shelton. The record does not indicate where she resided, but she returned to her parental home after about six weeks and lived there until January 26, 1980. She left home that day following a quarrel with her mother. When she did not return, her parents reported her as a runaway to the Eugene Police Department.

On March 2, 1980, appellant was stopped for a traffic offense. When it was discovered that she had been reported as a runaway, she was taken into custody and transported to the Lane County Juvenile Detention Center. On March 3, a petition, verified by a juvenile counselor, was filed in the Lane County Juvenile Court; it alleged that appellant was within the court's jurisdiction because she had run away from her parental home. The next day, by order of the juvenile court referee, she was placed in the custody of a temporary shelter care center.

On March 26, appellant ran away from the shelter care center, and a second runaway report was filed with the Eugene Police Department. Five days later, she was married to Shelton, her employer, age 37, in Gold Hill, by the Jackson County Justice of the Peace. Her marriage license application falsely stated that she was 22 years old. She returned to Eugene and took up residence in her husband's home.

On April 1, Lane County juvenile authorities were informed of appellant's marriage by her lawyer. No action

was taken, however, until April 6, when Eugene police officers took appellant into custody at her marital home. They had neither an arrest warrant nor an order by the juvenile court to take her into custody. She was transported to the Lane County Juvenile Detention Center. A search of her purse produced an Oregon driver's license for a person with a different name and age.

On April 7, another petition was filed in Lane County Juvenile Court alleging that appellant was within the court's jurisdiction because she had (1) run away from the shelter care center; (2) made a false statement in a marriage license application; and (3) possessed a fictitious driver's license. On July 1 and 2, a fact-finding hearing was held. The court found that appellant had committed the offenses with which she was charged and subsequently placed her on six months supervised probation.

■     In her first assignment of error,[1] appellant contends that the juvenile court should have dismissed the April 7 petition because it lacked jurisdiction over her. She argues that juvenile court jurisdiction is limited to minors and that she became emancipated, pursuant to ORS 109.520,[2] upon her March 31 marriage.

ORS 419.476 provides:

"(1)   The juvenile court has exclusive original jurisdiction in any case involving a person who is *under eighteen years of age* and:

"(a)   Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state county, or city; * * *

"* * * * *

"(f)   Who has run away from his home." (Emphasis supplied.)

---

[1] Appellant's fifth assignment of error is indistinguishable from her first assignment and will not be discussed separately.

[2] ORS 109.520 provides that persons shall be deemed to arrive at the age of majority upon their being married "according to law." Appellant was not married according to law, in that she was 16 years old at the time; ORS 106.010 provides that "marriage is a civil contract entered into * * * [by] females at least 17 years of age * * *." However, because we conclude that even a legally proper marriage does not defeat juvenile court jurisdiction, we need not determine the legal effect of appellant's marriage.

The statute makes no mention of "minors" and is unambiguous: juvenile court jurisdiction embraces persons under the age of 18. As the Supreme Court observed in determining that a married child came within juvenile court jurisdiction under an earlier, similarly worded statute, the marriage of a minor changes many of her rights and disabilities, but "it [does] not give her a new birthdate from which to reckon her years." *Ex Parte Packer,* 136 Or 159, 162, 298 P 234 (1931); *Annot.,* 14 ALR2d 336 (1950). Moreover, ORS 419.476(4) itself expressly excepts from juvenile court jurisdiction persons emancipated pursuant to ORS 109.550 to 109.565. Appellant does not contend that she satisfied the statutory emancipation procedures, however, and the fact that this statute does not make an exception for any other method of emancipation, *e.g.,* marriage, is an additional reason for holding that other methods of emancipation do not deprive the juvenile court of jurisdiction.

■     In her second assignment, appellant contends that the Eugene police officers who took her into custody at her marital home on April 6, did not have any legal authority to do so, and, therefore, the Oregon driver's license seized in the search of her purse at the Juvenile Detention Center could not be used against her. Respondent concedes that if it was improper to take appellant into custody, then the license may not be used against her. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Lloyd,* 22 Or App 254, 263, 538 P2d 1278 (1975).

Respondent contends that the Eugene police had legal authority to take appellant into custody. It relies on ORS 419.569(1)(b),[3] which permits proper legal authorities

---

[3] ORS 419.569 provides:

"(1) A child may be taken into temporary custody by a peace officer, counselor, employe of the Children's Services Division or by any other person authorized by the juvenile court of the county in which the child is found, in the following circumstances:

"(a) Where, if the child were an adult, he could be arrested without a warrant; or

"(b) Where the child's condition or surroundings reasonably appear to be such as to jeopardize his welfare; or

to take a child into custody if she is found in conditions or surroundings which reasonably appear to be such as to jeopardize her welfare. The record amply indicates that the police found appellant in such circumstances on April 6: Appellant was 16 years old. She was reported by her parents as having run away from their home on January 26, and a petition was filed on March 3 in Lane County Juvenile Court alleging that she was within the jurisdiction of the court by reason of having run away from home. As a result of the filing of that petition, she was temporarily committed to a shelter care center. On March 26, she ran away from the shelter care center. Although not of legal age to marry, she had gone through a marriage ceremony with a man 21 years her senior, while she was a runaway child, and was living with him against the wishes of her parents. Under these circumstances, we conclude that appellant's "conditions and surroundings reasonably appeared to be such as to jeopardize [her] welfare," and the police were authorized to take her into temporary custody pursuant to ORS 419.569(1)(b).[4] Because appellant urges as the only ground for suppression of the fictitious driver's

---

"(c) Where the juvenile court, by order indorsed on the summons as provided in subsection (3) of ORS 419.486 or otherwise, has ordered that the child be taken into temporary custody.

"(2) A private person may take a child into temporary custody in circumstances where, if the child were an adult, the person could arrest the child."

[4] Respondent also relies on ORS 419.519, which provides, in pertinent part:

"A person, agency or institution having legal custody of a child has the following duties and authority:

"(1) to have physical custody and control of the child.

" * * * * * * "

Appellant had been placed in the temporary legal custody of the shelter care center when she ran away on March 26. A counselor from that home reported her to the Eugene Police as a runaway. Under ORS 419.519, agents of the shelter care center would themselves have had authority to remove her physically from Shelton's home on April 8, and we think that the filing of a runaway report with the Eugene Police should be interpreted as a request by the shelter care center that the police act as its agents in obtaining physical custody of the runaway. And it is, after all, only sensible that legal authorities be able to take custody of a runaway child, wherever she is found. (The record indicates that the police officers actually picked up appellant because of the urgings of a counselor at the Lane County juvenile detention facility, who could not herself grant them authority to take custody of appellant. The officers' authority flowed from the prior runaway report, however; that the officers may have been mistaken as to the source of their authority does not change the fact that they had it.)

license that the search of her purse was invalid because the police were not authorized to take her into custody, and we conclude that they were, her claim of error must fail. *But see, State v. Newman,* 292 Or 216, 637 P2d 143 (1981).

■     In her third assignment, appellant claims error in denying her demurrer to the charge in the April 7 petition that on March 26, 1980, she ran away from the shelter care center. She argues that the demurrer should have been sustained, because the shelter care center was not her "home." We disagree.

ORS 419.476(1)(f) provides that the juvenile court has jurisdiction over a child who "has run away from his home." "Home" is not defined in ORS chapter 109, but policy favors a definition which is broader than merely the parental home. In fact, it is, if anything, more important to assert juvenile court jurisdiction over a child who has run away from a shelter home, foster home or other child care center to which she had been committed for having already run away from her parental home than to assert it over a first time runaway. The facility to which a child is legally assigned is her "home" for purposes of ORS 419.476(1)(f).

■     In her fourth assignment, appellant contends that the trial court should have dismissed the charge that she possessed a fictitious Oregon driver's license because the charge was filed directly in juvenile court rather than being filed first in district court and then remanded. ORS 419.533(3) provides:

"The juvenile court may enter an order directing that all cases involving violation of law or ordinance relating to the use or operation of a motor vehicle, boating laws or game laws be remanded to criminal or municipal court, subject to the following conditions:

"(a) That the criminal or municipal court prior to hearing a case, other than a case involving a parking violation, in which the defendant is or appears to be under 18 years of age notify the juvenile court of that fact; and

"(b) That the juvenile court may direct that any such case be remanded to the juvenile court for further proceedings."

The Lane County Circuit Court has entered such a standing procedural order.

Appellant does not tell us, however, why this departure from procedure compels dismissal of the license charge.[5] She did not argue, and we do not understand, that she was in any way prejudiced or otherwise denied due process. It is significant that the juvenile court system is generally considered to be more favorable to a child than is the adult court system, because in the former the welfare of the child is the highest concern. ORS 419.474(b); *Hills et al v. Pierce et al,* 113 Or 386, 391, 231 P 652 (1925). ORS 419.533(1)(c) itself provides that a child is to be remanded to the adult courts only if retaining juvenile court jurisdiction would not serve the best interests of the child. Similar considerations guide the juvenile court in determining whether to order a case remanded under ORS 419.533 (3) (b).

With this in mind, we do not interpret ORS 419.533(3) as prohibiting a juvenile department from filing a case relating to the use or operation of a motor vehicle directly in juvenile court if the department thinks that the juvenile court would be the better forum. Here, in fact, the "case" involves more than the violation of a law relating to motor vehicles, for that violation is intertwined with the charges of false swearing on her marriage application and running away from the shelter home. It is both good sense and consistent with the statutory scheme to consolidate all charges directly in one proceeding.

■ In her sixth assignment of error, appellant contends that the trial court should have granted her motions for judgments of acquittal on each charge filed against her. With respect to the charge that she ran away from the shelter care center on March 26, she argues that there was no evidence admitted in the July hearing that she was ever committed to that facility; therefore, she could not have run away from it. The March 4 detention order committed her to the center, however, and the court properly took judicial notice of that order.[6]

---

[5] Apart from ORS 419.533, it is undisputed that the juvenile court has jurisdiction over this violation. ORS 419.476(1)(a).

[6] *State ex rel v. Richardson,* 48 Or 309, 313, 85 P 225 (1906), upon which appellant relies, concerned whether a court may take judicial notice of *facts* which it has acquired in a prior hearing of the same case.

■ Appellant contends that she should have been acquitted of the charge that she possessed an Oregon driver's license which she knew to be fictitious, because there was no evidence that she *knew* she possessed it. The license was found in her purse, however, and, under all the circumstances, the court could infer that she knew that she had it.

■ Appellant argues that she should have been acquitted of the charge that she made a false statement in an application for a marriage license, because there was no evidence that *she* made the false statement. Direct evidence is not required; circumstantial evidence may suffice. The information contained in the application was shown to be false, and there was evidence that the signature on the application was hers. The court could find beyond a reasonable doubt that it was she who made the statements.

■ ■ Finally, appellant contends that she should not have been found to be within the jurisdiction of the court based on the allegation in the March 3 petition that she ran away from her parental home. She argues that she was emancipated under the common law doctrine of implied emancipation, *Flynn v. Baisley,* 35 Or 268, 273, 57 P 908 (1899), and that she was, therefore, free of parental control. Even if this doctrine survived the enactment of the statutory scheme for emancipation, there is no evidence here, unlike in *Flynn,* that appellant's parents intended to emancipate her; in fact, their filing a runaway report belies any such intention. Moreover, there is a rebuttable presumption that a minor child who resides in her parents' home is not emancipated. *Gossett v. Van Egmond,* 176 Or 134, 147, 155 P2d 304 (1945). Appellant was living with her parents when she ran away on January 26, and she has not overcome the presumption.

Affirmed.