Argued and submitted May 12, Wallowa County Courthouse, Enterprise, affirmed October 6, 2004, petition for review denied January 25, 2005 (338 Or 16)

In the Matter of Clifford Hilliard,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

CLIFFORD HILLIARD,
*Appellant.*

MC 010032B; A121364

98 P3d 767

Kent A. Anderson filed the brief and argued the cause for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

In this appeal of appellant's commitment to the custody of the Oregon Mental Health Division, appellant raises two assignments of error. First, he argues that the record does not provide clear and convincing evidence that he was diagnosed as chronically mentally ill pursuant to ORS 426.495(2).[1] Second, he argues that the evidence is insufficient to meet the state's burden of proving, by clear and convincing evidence, that he had been "committed" twice within the previous three years pursuant to ORS 426.060, a condition that appellant argues is required to satisfy the definition of "mentally ill person" set forth in ORS 426.005(1)(d)(C)(ii). We review *de novo* and affirm.[2]

In March 2003, appellant was apprehended on an outstanding warrant and taken to the county jail. After being released from custody, appellant refused to leave the jail. Appellant threatened the police officers, and it required three squad cars with two police officers in each squad car to bring him into the hospital. Dr. Juguilon, a psychiatrist, testified that he first met appellant on March 22, 2003. Juguilon testified that appellant was placed in a secure room at the hospital.

A commitment hearing was held April 7, 2003. Ultimately, the trial court committed appellant to the Mental

---

[1] ORS 426.495(2) provides, in part:

" 'Chronically mentally ill' means an individual who is:

"* * * * *

"(b) Diagnosed by a psychiatrist, a licensed clinical psychologist or a non-medical examiner certified by the Department of Human Services as suffering from * * * a chronic major affective disorder * * * or another chronic psychotic mental disorder other than those caused by substance abuse."

[2] The legislature amended ORS 19.415(3), which provides our standard of review in this case, in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [decree] judgment in a case that constituted a suit in equity under common law, the Court of Appeals shall try the cause anew upon the record."). Those amendments apply to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). The judgment here was entered before the effective date of the amended statute.

Health Division after finding that appellant was chronically mentally ill and had been placed, at least twice within the previous three years, "in the hospital for a condition that makes [appellant] exhibit symptoms of a behavior substantially similar to why [he was] brought in today." The court also found that, "to a reasonable medical probability," appellant would continue to deteriorate if left untreated.

On appeal, appellant first argues that the trial court erred in committing him because the state failed to show that appellant was diagnosed with a "chronic" mental illness. We reject appellant's argument without discussion.

We turn to appellant's second assignment of error—that the record does not provide clear and convincing evidence that appellant was "committed" twice within the three years previous to the most recent commitment hearing.

Appellant argues that, although the record contains evidence that he previously had been admitted to the hospital on numerous occasions, "the record is unclear as to how many or which of these admissions involved commitment by the court, pursuant to ORS 426.060, as required for commitment based on chronic mental illness."

ORS 426.005(1)(d)(C) defines a "mentally ill person" as a person who:

"(i) Is chronically mentally ill, as defined in ORS 426.495;

"(ii) *Within the previous three years, has twice been placed in a hospital or approved inpatient facility* by the department under ORS 426.060;

"(iii) Is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations or inpatient placements referred to in sub-subparagraph (ii) of this subparagraph; and

"(iv) Unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate * * *."

(Emphasis added.) Appellant contends that, although the record indicates a number of hospital admissions since 2000, "the record does not provide clear and convincing evidence of

two or more commitments within three years prior to the April 7, 2003, hearing." The state responds that we should take judicial notice "of the underlying civil commitment that led to the trial court's revocation of Hilliard's trial visit on November 15, 2001, as well as his subsequent recommitment on January 3, 2002."

■       Although we cannot take judicial notice of the contents of case files from prior commitment cases, *see State v. Watkins*, 35 Or App 87, 90, 581 P2d 90 (1978), we can take judicial notice of the resulting court orders in such cases, *see, e.g., State ex rel Juv. Dept. v. Williams*, 55 Or App 951, 958, 640 P2d 675 (1982) (court properly took judicial notice of existence of commitment order). The Umatilla County Circuit Court entered an order on November 15, 2001, that revoked appellant's "trial visit" and ordered appellant to be transported "to the Eastern Oregon Psychiatric Center in Pendleton for the remainder of the commitment period pursuant to ORS 426.275(3)." On January 3, 2002, the Umatilla County Circuit Court entered a "judgment of continued commitment" pursuant to ORS 426.301, ordering appellant "committed to the Mental Health Division for an additional period of time not to exceed 180 days[.]"

■       The judgment in the present case was entered on April 8, 2003. Thus, the question is whether clear and convincing evidence supports a conclusion that appellant, "[w]ithin the previous three years, has twice been placed in a hospital or approved inpatient facility by [Department of Human Services (DHS)]." ORS 426.005(1)(d)(C)(ii).

Based on our review of the statutory scheme, appellant's focus on the number of prior "commitments" is misplaced. Commitment and placement in a hospital or approved inpatient facility by DHS are not synonymous. As explained below, we conclude that clear and convincing evidence supports a conclusion that appellant had, at least twice, been placed in a hospital or inpatient facility by DHS.

A commitment proceeding is initiated pursuant to ORS 426.070. After holding a hearing, the trial court may take any of several actions. If the court does not find the person to be mentally ill, or finds the person to be mentally ill but willing to participate in voluntary treatment, the court

will dismiss the case. ORS 426.130(1)(a), (b)(A). If the court finds the person to be mentally ill, the court may order the person conditionally released, subject to the requirements of ORS 426.125. ORS 426.130(1)(b)(B). A person who is conditionally released is not committed to DHS for treatment. The court also may order a person found to be mentally ill committed "to [DHS] for treatment[.]" ORS 426.130(1)(b)(C). However, DHS need not place the person in a hospital or inpatient facility: "The department may place the committed person in outpatient commitment under ORS 426.127." ORS 426.130(1)(b)(C)(ii). If the court orders either conditional release or commitment to DHS, the conditional release or commitment "shall be for a period of time not to exceed 180 days." ORS 426.130(2). Thus, ORS 427.130 makes it clear that a person may be "committed" for a period not to exceed 180 days without ever being "placed in a hospital or approved inpatient facility" by DHS. "Commitment" therefore cannot be synonymous with placement in a hospital or approved inpatient facility.

Other statutes govern situations in which persons committed to DHS may be placed in hospitals and inpatient facilities or transferred out of such facilities. ORS 426.273, for example, provides that a person who had been committed to DHS pursuant to ORS 426.130 can be transferred from inpatient to outpatient "trial visit" status if DHS determines that "the committed person can be appropriately served by outpatient care during the period of commitment." ORS 426.273(2). ORS 426.275 provides a procedure by which persons on outpatient "trial visit" status pursuant to ORS 426.273, on outpatient commitment pursuant to ORS 426.127, or on conditional release pursuant to ORS 426.125, may be brought back before the court for the purpose of determining whether the current placement should be continued or modified or whether the person should "be returned to [DHS] for involuntary care and treatment on an inpatient basis[.]" ORS 426.275(3); see also ORS 426.060 (indicating that a person committed to DHS may be transferred to a less restrictive facility pursuant to ORS 426.273 and to a more restrictive facility pursuant to ORS 426.275). Thus, under ORS 426.275, a person may be "placed in a hospital or approved inpatient facility" by DHS, ORS

426.005(1)(d)(C)(ii), as the result of a proceeding that is *not* a 180-day commitment proceeding.

Finally, ORS 426.301 and ORS 426.307 apply to situations in which DHS seeks to provide further treatment to a person after the initial 180-day commitment ends. Under those statutes, a person who has previously been committed may be committed again. However, a person who receives a new commitment pursuant to ORS 426.301 and ORS 426.307 is not necessarily "placed in a hospital or approved inpatient facility" by DHS, ORS 426.005(1)(d)(C)(ii), but, rather, may be in any treating facility. ORS 426.301(1). A "facility," however, need not be a hospital or inpatient treatment facility: ORS 426.005(1)(c) defines "facility" to include not only hospitals but other types of facilities as well, including day treatment facilities.

We conclude that the above-described context for ORS 426.005(1)(d)(C)(ii) definitively establishes that being "placed in a hospital or approved inpatient facility" by DHS is not the same as being committed to DHS for a 180-day period. As explained above, a person may be committed to DHS without ever being placed in a hospital or inpatient facility. Moreover, a person who has been committed to DHS for a 180-day period may, in fact, be "placed in a hospital or approved inpatient facility" by DHS more than one time during that period, if the person is transferred to "trial visit" status pursuant to ORS 426.273 and later rehospitalized pursuant to ORS 426.275. Thus, appellant's contention that the state failed to prove sufficient "commitments" is fundamentally flawed. The state was not required to prove commitments but rather was required to prove placements.

We turn to the question whether the state did, in fact, prove by clear and convincing evidence that appellant, "[w]ithin the previous three years, ha[d] twice been placed in a hospital or approved inpatient facility" by DHS. We conclude that the state met its burden. At the hearing, Juguilon testified that appellant had been placed in the hospital in March 2000, July 2001, September 2001, and November 2001. Juguilon's testimony does not, however, establish that

appellant was placed in the hospital on each of those occasions *by DHS*. Thus, Juguilon's testimony alone does not suffice to demonstrate that, within the three years preceding the hearing, appellant had twice been placed in the hospital by DHS.

The November 15, 2001, order described above, however, provides the missing link. As noted, that order revoked appellant's "trial visit" status, recommitted him to DHS for the remainder of the commitment period, and ordered him transported to the Eastern Oregon Psychiatric Center. Thus, the order establishes that appellant was, in fact, placed in a hospital by DHS on November 15, 2001. The order also establishes that appellant had previously been placed in a hospital or approved inpatient facility by DHS within the 180 days before the revocation of the "trial visit." That is so because, under the provisions of ORS 426.273, appellant could not have been placed on "trial visit" or outpatient status unless he previously had been committed to DHS and placed in a hospital or inpatient treatment facility. *See* ORS 426.060 (when a person has been committed to DHS, transfer from inpatient to outpatient facility is made "by following the procedures for trial visits" under ORS 426.273). Thus, the record establishes that appellant had been placed by DHS "in a hospital or approved inpatient facility" twice in 2001. Both of those placements necessarily occurred within three years of the April 7, 2003, hearing in the present case. The trial court correctly concluded that appellant met the criteria for chronic mental illness pursuant to ORS 426.005(1)(d)(C).

Affirmed.