## RICHARDSON v. BROWNING.

Court of Appeals of·District of Columbia.
Submitted March 7, 1927. Decided
April 4, 1927.

No. 4511.

1. Infants ⊙⊃18—Juvenile court held to have jurisdiction of subject-matter and person of incorrigible girl in proceeding to commit to training school (Act July 9, 1888, 25 Stat. 245, as amended by Act June 26, 1912, 37 Stat. 171).

Juvenile court of District of Columbia *held* to have jurisdiction of subject-matter and of person of incorrigible girl, in proceedings to commit to National Training School, under Act July 9, 1888, 25 Stat. 245, as amended by Act June 26, 1912, 37 Stat. 171.

2. Infants ⊙⊃10—Marriage of incorrigible female child committed to national training school does not entitle her to release on habeas corpus (Code, § 1126; Act July 9, 1888, 25 Stat. 245, as amended by Act June 26, 1912, 37. Stat. 171; Act May 3, 1876, § 8 [Comp. St. § 9402]; Act Feb. 13, 1885, 23 Stat. 302; Act July 26, 1892, § 5, 27 Stat. 268; Act March 19, 1906, § 8, 34 Stat. 73).

Under District of Columbia Code, § 1126, marriage of incorrigible female child committed to the National Training School incorporated

under Act July 9, 1888, 25 Stat. 245, as amended by Act June 26, 1912, 37 Stat. 171, does not automatically terminate right of governmental custody and care, or entitle such child to release in habeas corpus proceeding, in view of Act May 3, 1876, § 8 (Comp. St. § 9402), Act Feb. 13, 1885, 23 Stat. 302, Act July 26, 1892, § 5, 27 Stat. 268, and Act March 19, 1906, § 8, 34 Stat. 73.

Appeal from Supreme Court of District of Columbia.

Habeas corpus proceeding by Evelyn Browning against Lottie Richardson, Superintendent of the National Training School for Girls. From an order discharging petitioner from the custody of respondent, respondent appeals. Reversed and remanded.

F. H. Stephens and R. B. Keech, both of Washington, D. C., for appellant.

C. N. Joyce, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting Associate Justice. Evelyn Browning was born on December 22, 1908, and was legally married to one Tracy Browning on September 30, 1921. On the 21st of June, 1923, a petition was filed by one Mary G. Gainey, of the women's bureau of the metropolitan police force of the District of Columbia, in the juvenile court of said District, praying that said Evelyn Browning be adjudged destitute of a suitable home and adequate means of earning an honest living, and to have her committed to the Board of Children's Guardians, in accordance with the provisions of an act entitled "An act to provide for the care of dependent children in the District of Columbia and to create a board of children's guardians." 27 Stat. 268, 269. Thereafter, on March 25, 1924, and pursuant to said petition, the said Evelyn Browning was adjudged destitute and committed to said board by the said court, she being at that time 15 years of age.

On the 23d day of April, 1924, the said Evelyn Browning having become uncontrollable, the said Board of Children's Guardians, claiming to act as her legal guardian, filed a petition in the said juvenile court, praying to have her adjudged incorrigible and committed to the National Training School for Girls, in accordance with the provisions of an act entitled "An act to incorporate the Reform School for Girls of the District of Columbia," approved July 9, 1888 (25 Stat. 245), as amended by the District of Columbia Appropriation Act approved June 26, 1912 (37 Stat. 171). Pursuant to said petition, a judgment and order of said court was entered on May 7, 1924, adjudging the said Evelyn Browning to be incorrigible, and committing her to said National Training School for Girls "until reformed, or during her minority."

On January 12, 1926, the said Evelyn Browning filed in the Supreme Court of the District of Columbia a petition for habeas corpus, in which she represented that she was a married woman at the time she was so committed to the National Training School for Girls, that she is being held by that institution without any color or pretense of law whatever, and that she should be discharged from further custody by said National Training School for Girls. Issues having been joined on this petition, and the facts as heretofore stated having been stipulated, thereafter, on April 1, 1926, an order was entered by the said Supreme Court, discharging the petitioner from the custody of the superintendent of said National Training School. From that judgment an appeal has been prayed to this court by the superintendent of said training school.

The act entitled "An act for the protection of children in the District of Columbia and for other purposes," approved February 13, 1885 (23 Stat. 302), provided that the Washington Humane Society should have authority to prefer complaints before any court of the District of Columbia having jurisdiction in any case where the welfare of a child was involved. This act also gave authority and power to the agents of said society to take before said courts dependent and delinquent children, and to prosecute those who were responsible for such dependency or delinquency. Thereafter, by the act approved July 26, 1892, entitled "An act to provide for the care of dependent children in the District of Columbia and to create a board of children's guardians" (27 Stat. 268), the Board of Children's Guardians of the District of Columbia was created.

Said act provided, in substance, that the said board should have the care and supervision of children committed under the Act of February 13, 1885, supra, of children who were destitute of suitable homes and adequate means of earning an honest living, abandoned children, children of unfit parents, vagrants, children exposed to vicious or immoral associations, and vicious and incorrigible children, when committed to the care of such board by the police or criminal courts of the District, which courts were given power to make such

commitment when the child in question was not over 16 years of age. Section 5 of this act provided that the said board should be the legal guardian of all such children so committed to it by the courts.

By the act approved March 19, 1906, entitled "An act to create a juvenile court in and for the District of Columbia" (34 Stat. 73), the juvenile court of the District of Columbia was created, and this court, by section 8 of said act, was given original and exclusive jurisdiction over children such as had theretofore been exercised by other courts of the said District, under and by virtue of the Act of February 13, 1885, supra, and other acts amendatory thereof (27 Stat. 268; 31 Stat. 1095). Said section 8 provided, in part:

" * * * All children of the class now liable to be committed to the Reform School for Boys and the Reform School for Girls shall hereafter be committed by the juvenile court to said schools respectively. * * * "

An act entitled "An act revising and amending the various acts establishing and relating to the Reform School in the District of Columbia," approved May 3, 1876 (19 Stat. 49 [Comp. St. § 9392 et seq.]), provided (section 8) that boys under the age of 16 years, who might be committed by any of the courts of the District of Columbia, might be committed to the Reform School of said District until they should arrive at the age of 21 years. Various causes were given which might be sufficient to authorize such commitment, one of which is the following:

" * * * Fourth, any boy under sixteen years of age who is incorrigible, or habitually disregards the commands of his father or mother, or guardian, who leads a vagrant life, or resorts to immoral places or practices, or, neglects or refuses to perform labor suitable to his years and condition, or to attend school. And the president of the board of trustees may also commit to the Reform School such boys as are mentioned in the foregoing third and fourth classes upon application or complaint in writing of a parent, or guardian. * * * "

By the Act of July 9, 1888, entitled "An act to incorporate the Reform School for Girls of the District of Columbia" (25 Stat. 245), a reform school for girls of the District of Columbia was authorized, the powers thereof to be exercised by a board of trustees, which board was given the same powers and duties relative to girls as were given with respect to boys by the Act of May 3, 1876, supra.

[1] From a consideration of these various statutes above cited, it is apparent that the juvenile court of the District of Columbia, at the time of the commitment of Evelyn Browning to the custody of appellant, had full and complete jurisdiction of not only her person, but of the subject-matter as well. She, being admittedly of the age of 15 years and incorrigible, must be held to have been properly committed to the custody of appellant, unless some error is apparent in the record of her commitment, or unless the principal contention made by her is sufficient to authorize her discharge, namely, that she was a married woman at the time of her commitment.

We have carefully examined the record, and are unable to discern wherein the petitioner has been deprived of any of the rights which are secured to her by the law of this jurisdiction. In Rule v. Geddes, 23 App. D. C. 31, Mr. Justice Shepard, speaking for the court, called attention to the fact that such proceedings are not intended as punishment, but are for the moral and physical well-being of the children involved. He said:

"The proceedings had upon this application were but the methods prescribed by law for the permitted transfer of guardianship of the person and for the protection of the state from imposition. The so-called commitment was but the legal warrant for the admission of the petitioner into the institution, and no more an order for imprisonment than are letters of guardianship issued by a probate court, or a decree transferring the possession of an infant made by a tribunal having jurisdiction of its custody in a particular case. The child herself, having no right to control her own action or to select her own course of life, had no legal right to be heard in these proceedings. Hence, the law which does not require her to be brought in person before the committing officer, or extend her the privilege of a hearing on her own behalf, cannot be said to deprive her of the benefit of due process of law."

To a like effect are State v. Bryant, 94 Neb. 754, 144 N. W. 804; Weber v. Doust, 84 Wash. 330, 146 P. 623; In re Mary Turner, 94 Kan. 115, 145 P. 871, Ann. Cas. 1616E, 1022; In re Hazel Sharp, 15 Idaho, 120, 96 P. 563, 18 L. R. A. (N. S.) 886; Lindsay v. Lindsay, 257 Ill. 328, 100 N. E. 892, 45 L. R. A. (N. S.) 908, Ann. Cas. 1914A, 1222, and authorities hereinafter more specifically referred to.

[2] Section 1126 of the District of Columbia Code provides:

"Sec. 1126. *When Guardianship Ceases.*—The natural guardianship or the appointive

guardianship of the person aforesaid shall cease, in the case of a male infant when he is twenty-one years of age, and in the case of a female infant when she is eighteen years of age or marries."

In view of this statute, it becomes material to inquire whether, upon the marriage of the petitioner, all custody over her person by the Children's Board of Guardians and the National Training School for Girls ceased. As we have seen, the custody of her person was not by virtue of any criminal or punitive process, but was one existing solely, according to the theory of the law, for her welfare and benefit. In other words, organized society was attempting by a species of guardianship to do for her what under normal conditions the natural parents do for a child.

The question is one not devoid of difficulties, and one upon which the authorities are not entirely harmonious. However, we believe the weight of authority favors the view that marriage of a female child, in itself, does not automatically terminate the control of delinquent or dependent children in cases like that now before us.

In re Hook, 95 Vt. 497, 115 A. 730, 19 A. L. R. 610, was a habeas corpus petition to release one Emma Bagley Hook, a child 13 years of age, from the Industrial School of Vermont, to which place she had been committed on petition of the State Board of Charities and Corrections as a delinquent child. She had left the care of the board, to which she had been legally committed, and while absent, was married. She claimed release because of this marriage. The court held:

"From a careful consideration of the question in the light afforded by the cases referred to, we conclude that the jurisdiction of the Hartford juvenile court was not affected by this child's marriage, and that thereafter that court could lawfully take such action with reference to her discipline and control as the circumstances warranted."

In Stoker v. Gowans, 45 Utah, 556, 147 P. 911, Ann. Cas. 1916E, 1025, the petitioner, a girl 13 years of age, was adjudged a delinquent child by the juvenile court. While free on parole, she claimed to have been married. The court called attention to the fact that the Utah statute did not provide that the operation of the law should be suspended merely because a delinquent enters into the marriage relation, but that it distinctly provided the custody should continue until the child was 21 years of age. It also called attention to the fact that, if the state of dependency or delinquency ceased because of marriage, ample opportunity existed, under the law, to apply to the court for a modification of the commitment. The writ was discharged.

In McPherson v. Day, 162 Iowa, 251, 144 N. W. 4, the petitioner had been committed as an incorrigible to the Industrial School for Girls. She escaped, and while at large attained her majority, 18 years, and the same day was married. Thereafter she was taken into custody, and sued out a writ of habeas corpus. The court held that her marriage did not affect her release and that her period of detention did not cease until she was 21 years of age. It was, however, suggested that, if her marriage had in fact resulted in her redemption, she should apply to the court for modification of the order of commitment.

In re Lundy, 82 Wash. 148, 143 P. 885, Ann. Cas. 1916E, 1007, involved a girl 17 years of age, who had been married to a man of full age. Attention is called to a statute of Washington which provides: "All females married to a person of full age shall be deemed and taken to be of full age." Rem. & Bal. Code, Wash. § 8744. The court held that, although this statute operated to remove the ordinary disabilities of minority, it did not affect the juvenile court law, which, by its terms, obviously was intended to operate according to the age of the individual.

As opposed to this view, State v. Eisen, 53 Or. 297, 99 P. 282, 100 P. 257, is commonly cited. This was a case involving a criminal prosecution for aiding in the delinquency of a female child. The court held that, the marriage of a female over 15 years being permitted by statute, it must be presumed that upon marriage the child loses her status as such, and does not come within that designation in the Juvenile Court Act.

A similar view was taken by the appellate court of California in Re Lewis, 3 Cal. App. 738, 86 P. 996. In this case the petitioner, who had been committed by the superior court to the Whittier State School for Juvenile Offenders, was shown to have been married since the filing of the complaint and before petition filed. The court held that such marriage automatically took her out of the class of persons known as dependent children. However, the same court, in a later consideration of a similar matter, departed from the doctrine announced in Re Lewis, supra. In re Willis, 30 Cal. App. 188, 157 P. 819. Here the petitioner was placed on probation during her minority by the superior court, because of a charge of vagrancy; she being at that time a married woman. She contended the court had no jurisdiction over married women. The court said:

"We can find no authority which deprives

the Legislature of the right to confer jurisdiction upon the juvenile court in the manner and form described by the act. In order to sustain the contention of petitioner, the court would be compelled to conclude that it was only competent for the Legislature to vest jurisdiction in the juvenile court over minors. There is no constitutional limitation that our attention has been called to which so restricts the legislative power."

The underlying reason for statutes such as section 1126 of the District of Columbia Code, hereinbefore referred to, as well as for the various court decisions holding that the marriage of a female child should be held to mark an emancipation from parental or other guardianship, is based upon the public policy that the control by the husband of his wife's property ought not to be denied, or interfered with, or, under some jurisdictions, that the wife, having assumed the marital relation, is of right entitled to control her own property. But such reason does not at all apply to cases where the physical or moral welfare of the child is involved, and where the government has intervened, as parens patriæ, to secure such physical or moral well being.

The statute of May 3, 1876, relating to the Reform School in the District of Columbia, and hereinbefore referred to (19 Stat. 49), and acts amendatory thereto, as was said in Re Lundy, supra, were obviously framed to operate according to the age of the individual who comes within its purview, and without consideration of either the property rights of the child or her social status. Section 9 of said Act of May 3, 1876, is as follows:

"Sec. 9. That every boy sent to the Reform School shall remain until he is twenty-one years of age, unless sooner discharged or bound as an apprentice; but no boy shall be retained after the superintendent shall have reported him fully reformed." 19 Stat. 51.

Section 6 of the Act of July 9, 1888 (25 Stat. 245), provides:

"Sec. 6. That all the sections of the act of May third, eighteen hundred and seventy six, entitled 'An act revising and amending the various acts establishing and relating to the Reform School of the District of Columbia,' not inconsistent with the provisions of this act, are hereby made applicable to the Reform School for Girls of the District of Columbia, except the words 'girls' shall be understood wherever the word 'boys' occurs in said act, and the words 'eighteen years' wherever the words 'sixteen years' occur."

There is nothing contained in the provisions of the Act of March 19, 1906 (34 Stat. 73), establishing a juvenile court, or acts amendatory thereof, which has been called to our attention, which at all militates against this construction of the said basic law of May 3, 1876. Nor is there any compelling reason which will induce any other conclusion. We are unable to conclude that one incorrigible female child, of tender years, may be a proper object of restraint, by organized society, for her own physical or moral good, and another female child, of like years and likewise exposed to physical or moral downfall, may not, because she has contracted the marriage relation, be subject to such watchful care and custody on the part of the government. Public policy demands her emancipation, upon marriage, in respect to her property; for, having assumed the burdens of the marital relations, having become one of the responsible heads of a family, she ought to also have control of her own property, that she may the better maintain her duties and responsibilities as a married woman. But there is no such reason for her emancipation in matters affecting her moral and physical welfare, and the welfare of the organized society in which she dwells. The government has a right, and it is its duty, to see to it that, while she is of the tender years which are ordinarily denominated as the years of her minority, she shall not live a life of delinquency or vice, or be exposed unnecessarily to moral or physical degradation.

If, because of her marriage or for other reasons, the incorrigibility of the petitioner has ceased, the law has provided ample remedy for her to present these facts and obtain relief. Nothing, however, is before us now but the legality of her commitment. Goldsmith v. Valentine, 36 App. D. C. 63; Posey v. Zinkham, 47 App. D. C. 293.

There appearing to be no error in that regard, the judgment of the court below is reversed without costs, and the cause remanded, with directions to discharge the writ and remand the petitioner to the custody of the appellant.

Reversed and remanded.