No. 39,644

In the Matter of JUDITH WATSON, KATHY WATSON, MARY GAIBEL and ARCHIE HENDERSON, Dependent and Neglected Children. CORA M. OSWALD, Guardian *ad litem, Appellee,* v. MAXINE ROBBINS, Natural Mother, *Appellant.*

(281 P. 2d 1116)

Opinion filed April 9, 1955.

*Robert L. Boyce, Jr.,* of Kansas City, argued the cause, and *Wm. E. Scott, Francis J. Donnelly,* and *Albert M. Ross,* all of Kansas City, were with him on the briefs for the appellant.

*Tudor M. Nellor,* of Kansas City, argued the cause, and *Donald E. Martin,* County Attorney, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This is an appeal from the judgment of the district court, which on appeal from the juvenile court and after a hearing, found the four minor children of appellant to be dependent and neglected as those terms are defined in our statute, G. S. 1949, 38-402. The court also affirmed judgment of the juvenile court which made the same finding and appointed a guardian of the person of the children with authority to have them adopted as provided in our statute, G. S. 1949, 38-408.

In this court the first question presented for our determination is whether the juvenile court had jurisdiction to hear the proceedings. The facts which gave rise to that question are as follows: The appellant was reared in Cedar Rapids, Iowa. Her mother, Mrs. Fleagle, and two brothers live there. In February, 1944, when she was only 16 years of age she married Frank E. Watson with whom she lived a little more than six years; two children were born to that marriage: Judith Ann on January 14, 1945, and Kathy E. on October 17, 1946. She was divorced from Frank E. Watson on March 29, 1950, and was awarded custody of the two minor chil-

dren. On August 22, 1950, she married Keith Gaibel and to that marriage Mary Frances Gaibel was born, November 22, 1951. Appellant was divorced from Keith Gaibel in March, 1952, and an order was made giving her the custody of their child. Sometime in the summer or early fall of 1952 she moved with her children to Bonner Springs, Kansas, to live in the home of her uncle, George Haugh. She worked for a time as a waitress at Jim Kline's Tavern. While at Bonner Springs she met Archie Henderson and lived with him perhaps intermittently for more than a year. They were not married. As the result of her association with Henderson a child was born October 9, 1953, to whom she gave the name Archie Eugene Henderson.

In November, 1953, she met Melvin Robbins. About the 1st of January, 1954, he asked her to quit Henderson and go with him to Cedar Rapids, Iowa. She did so, and they were married there on January 4, 1954. Three weeks later she left Robbins and went back to Henderson at Bonner Springs. Robbins followed her and swore to a complaint charging appellant and Henderson with unlawful cohabitation, perhaps under G. S. 1949, 23-118. Warrants were issued and they were both arrested at the residence where appellant, the children and Henderson were living and which Henderson had leased in Bonner Springs. They were taken to Kansas City, gave bond for their appearances, and their cases were later dismissed.

On January 27, Cora M. Oswald, a probation officer, filed in the juvenile court of Wyandotte County a petition charging the four minor children of appellant, above named, with being dependent and neglected, as those terms are defined in G. S. 1949, 38-402.

The point made on the jurisdictional question is that Frank E. Watson and Keith Gaibel were not notified of the proceedings in the juvenile court. The pertinent portion of our statute, G. S. 1949, 38-405, reads: ". . . The parents of the child, if living and their residence known, . . . shall be notified of the proceedings; . . ." There is no indication even now that the residence of either Watson or Gaibel was known or that either of them was living. The record does not indicate that either of them ever resided in Kansas. At the time appellant obtained her divorce from each of them she was given custody of the children or child of the marriage. She was notified of the proceedings and was present. Henderson was also notified as to the time and place of the hearing;

was in the courthouse on that day but did not go into the court-room where the hearing was being conducted, and in the final order disposing of the case in the juvenile court the court made a specific finding, "That due and legal notice of the time and place of this hearing has been given to all parties concerned . . ." No attempt was ever made to modify or set aside that finding. We think the jurisdictional question raised by appellant has no substantial merit.

In this court it is next contended, in several subdivisions which need not be individually noted, that the evidence before the juvenile court and before the district court is insufficient to support the judgment of the trial court. The point is not well taken.

After Cora M. Oswald filed a petition in the juvenile court above mentioned the children were taken into custody by a probation officer of the court on February 3, 1954, and proper places found for their temporary care. The first hearing was had in the juvenile court on February 4, 1954. Cora M. Oswald was appointed guardian *ad litem* of the children. At that time the evidence disclosed among other things that appellant had been living with Henderson most of the time for more than a year; that she had borne a child by him on October 9, 1953; and, that on November 1, 1953, Henderson had rented a place for them to live in Bonner Springs. This was a small house with two rooms, one room about 12 x 14 had a full size bed, a small dresser and a table on one side, and on the other side of the room was a couch of the kind that pulls out to be made into a bed. This room had an opening into another room about 9 x 12 which was a kitchen and dining room. The evidence indicated the appellant, Henderson and the four children were living there together and that Henderson was furnishing the food. At that hearing there was not much defense interposed to the charge of the complaint. Appellant and her new husband, Melvin Robbins, were there and represented to the court that they were going to Kansas City, rent a property and fix a home; that he would get work and maintain the family and look after all the children. The guardian *ad litem* recommended that procedure. It was brought out that Henderson was a married man; that he had a wife and three children; that he had appeared in the probate court and consented to the adoption of one of them, and that a divorce suit was pending between him and his wife in the district court of Wyandotte County. As a result the juvenile court continued the

hearing until March 6, and kept the children as wards of the court in the meantime. The court told appellant to leave Henderson alone. Appellant and Robbins had no money and they were recommended to meet Mrs. Grant of the Family Service. They did meet Mrs. Grant and she loaned them some money to try to get started. It appears that Melvin Robbins made no attempt to get work and five days later, February 9, 1953, the appellant went back to the juvenile court and reported that Robbins was so mean to her that she could not live with him. Also, she brought a suit for divorce against him on that day in the district court of Wyandotte County. The juvenile officers offered to find a job for appellant where she could work and keep the children. This offer was declined. Appellant went back to Bonner Springs where she was frequently seen in the company of Henderson on the street and at a movie one night, and he took groceries to the place where they had previously lived. Appellant testified that Henderson brought groceries there which she cooked, and she invited him to eat.

At the hearing on March 6, the above and other evidence was introduced. The appellant had no place to take the children except to the home rented by Henderson in Bonner Springs. She testified that she was not well; that she had "female trouble," and that she was going to have to have an operation. The two older children had been going to school, they were well-behaved, intelligent girls. The two younger children were examined by a physician. With respect to Mary Frances Gaibel the report showed she had signs of vitamin deficiency, knock knees, and secondary anemia. She would stumble when she walked and fell down repeatedly. Corrective shoes had been made for her which eliminated part of that trouble. The boy, Archie Eugene Henderson, showed signs of early vitamin deficiency and both ears revealed chronic infection. Both children showed evidence of neglect before they came into the care of the juvenile court.

On March 6, there was present in the courtroom Cora M. Oswald, the guardian *ad litem*, the appellant and her mother, Mrs. Fleagle. Henderson had been notified of the hearing, was in the corridor of the courthouse, but did not go into the room where the hearing was being conducted.

The material part of the court's judgment reads:

".   .   . It is the decision of the court that Judith and Kathy Watson, Mary Gaibel and Archie Henderson be and they are hereby committed to the care of Cora M. Oswald, a reputable citizen of good moral character and said chil-

dren are hereby made wards of said Cora M. Oswald and she is appointed as guardian of the persons of said children. As set forth in Section 38-408, G. S. Kansas, 1949, said guardian is hereby invested with the authority to place said children for adoption, to give consent thereto and to be a party to proceedings for the adoption of said children; and no other consent shall be necessary for the adoption of said children or any of them; the parental rights of Maxine Robbins, mother of all 4 children, are hereby divested, completely and permanently and the rights of Archie Henderson in and to the child bearing his name are also divested completely and permanently because of the nature and seriousness of the neglect of the children herein involved."

From this judgment Maxine Robbins appealed to the district court where there was a trial *de novo* on May 17 and 18, 1954. The court heard all the evidence introduced in the juvenile court and more. It would be no favor to the appellant or to her children to recite this evidence in detail. We have examined it carefully and find that it fully sustains the judgment of the trial court, which reads:

"The court after hearing all of the evidence presented on this appeal and arguments of respective counsel and after having examined the findings, conclusions and judgments and orders heretofore made by the Juvenile Court does hereby adopt, approve, affirm and sustain all of the findings, orders, conclusions, and judgments of Juvenile Court upon the evidence presented by the respective parties on this appeal hearing. The court finds from the evidence that the appeal of Maxine Robbins from the Juvenile Court findings, conclusions, orders and judgments should be denied. This court finds Judith Ann Watson, Kathy E. Watson, Mary Frances Gaibel and Archie Eugene Henderson, minors, are dependent and neglected children within the meaning of Section 38-402, G. S. 1949.

"It Is Therefore Ordered, Adjudged and Decreed, that the appeal of Maxine Robbins from the findings, conclusions, judgments and orders made by the Juvenile Court be and is denied. All orders, findings, conclusions, judgments and decrees now of record heretofore made by the Juvenile Court are examined, adopted, sustained, affirmed, and approved by this court this 18th day of May, 1954."

We have examined all of the authorities cited by counsel but it is unnecessary to analyze them here. Our statutes, G. S. 1949, 38-401, *et seq.*, authorize the steps taken by the juvenile court and the district court, and justify the action of those officials. See the many cases cited under the various sections of the statute. We find no error in the record. The judgment of the trial court is affirmed.