No. 41,005

In re: Loretta McCoy (Carson), Melvin A. Carson, Charlene Irene Loveland and Harold Eugene Loveland, dependent and neglected children. HAROLD and RUBERTA LOVELAND, *Appellants,* v. STEWARD M. REED, NEVA M. REED, JOHN BROCKMUELLER, GLADYS BROCHMUELLER, and STATE OF KANSAS, ex rel. RICHARD MANKIN, County Attorney of Lyon County,. *Appellees.*)

(334 P. 2d 820)

Opinion filed January 24, 1959.

*David H. Heilman*, of Council Grove, argued the cause and was on the briefs for appellants.

*Richard Mankin*, of Emporia, argued the cause and was on the briefs for appellees.

*James W. Putnam*, of Emporia, argued the cause, and was on the briefs for Steward M. Reed, Neva M. Reed, John Brockmueller and Gladys Brockmueller.

*Roy U. Jordan*, of Emporia, guardian *ad litem.*

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a proceeding collaterally attacking an order of the juvenile court of Lyon County, Kansas, taking four minor children from the custody of their parents as dependent and neglected children pursuant to the provisions of G. S. 1949, 38-401, *et seq.*

No appeal was taken from the order of the juvenile court declaring said children to be dependent and neglected and making them wards of the court, but nearly fourteen months later the parents (appellants) collaterally attack the order by a motion to quash all of said proceedings and restore custody of the children to the parents. The attack originated in the juvenile court on February 1, 1956, and by appeal went to the district court. From rulings consistently adverse to appellants appeal has been duly perfected to this court.

Appellants specify that the trial court erred in overruling the motion to quash for the following reasons:

"A. That no due and regular service of notice or summons was served upon each and all of said minor children as required by law.

"B. That no guardian ad litem represented the children throughout the entire proceedings.

"C. That the parents were not given an opportunity to be represented by an attorney of their own choosing."

Appellants also specify that the trial court erred in overruling the

motion for a new trial. This specification will be ignored. There having been no trial, the motion for a new trial is a nullity.

The foregoing are indicated by counsel for the appellants as the only questions involved on this appeal.

The facts concerning which there is no controversy are as follows:

On December 7, 1954, the county attorney of Lyon County filed a petition in the juvenile court of said county pursuant to G. S. 1949, 38-404, alleging that the four children of Ruberta Loveland, a resident of Emporia, Kansas, were dependent and neglected. The names and ages of the children on that date were Loretta Jean McCoy, aged 9 years; Melvin Alfred Carson, aged 7 years; Charlene Irene Loveland, aged 14 months; and Harold Eugene Loveland, aged 3 months. (The latter designated in the petition as "one baby boy, born to Mr. and Mrs. Harold Loveland in September, 1954 and first name not known.")

Harold Loveland, the last husband of Ruberta, is the father of Harold Eugene Loveland only. The others are children by different fathers.

The juvenile court of Lyon County on the 7th day of December, 1954, issued an order for the temporary detention of said children without notice, reciting in the order that upon investigation it found said children had been left alone in the home by the parents, without proper care or supervision, "and finding the children now in the home of a Mrs. Loveland at No. 127 So. State St., Emporia, Lyon Co., Kansas, and from other evidence, the Court does find that said children are neglected and that temporarily they should be made wards of the Court and temporarily left in the care and custody of said Mrs. Loveland, a relative, for care and maintenance until a hearing may be had on said petition, and that in the meantime the said parents with whom said children have been staying should be restrained from having them or interfering with the said Mrs. Loveland in their care."

The above named Mrs. Loveland in the temporary order was the stepmother of Harold Loveland. She is also referred to as Ruth Loveland.

Insofar as the record before this court discloses, the only notice given the parents concerning the hearing conducted on the 14th day of December, 1954, is the following:

"State of Kansas, Lyon County, ss.

"In the juvenile court of said county and state.

"In the Matter of Melvin Alfred Carson, et al. a Dependent-neglected Delinquent Children.

"To Mrs. Ida B. Wayman . . . Probation Officer:

"You are hereby commanded to notify Mr. and Mrs. Harold Loveland guardian-nearest relative, a suitable person, to appear in the Juvenile Court of said County and State, on the 14th day of December, 1954, at 2:00 o'clock P. M., to act in behalf of said children.

"In Witness Whereof, I have hereunto set my hand and seal, this 11 day of December, 1954.                    (Signed) W. W. Parker

W. W. Parker

Judge of the Juvenile Court

"Received this writ, this 11 day of December, 1954, and served the same by delivering personally to Mr. and Mrs. Harold Loveland, personally, a true copy thereof on Dec. 13, 1954.                    (Signed) Ida B. Wayman

Probation Officer"

The proceeding before the juvenile court of Lyon County on this dependent and neglect matter, in material respects, omitting the caption, is journalized as follows:

"Journal Entry of Judgment

"Making children wards of the Court, and taking custody of them.

"Now, on this 14th day of December, 1954, comes on for hearing the Petition filed herein Dec. 7, 1954, alleging said children dependent & neglected; Case set for hearing for Dec. 14, 1954; Notice served upon both parents; both parents present in Court in person and by their attorney, Kenneth Peery; O. S. Samuel, Atty., was appointed to represent the children; Elvin Perkins appeared as Co. Atty.:

"Various & sundry witnesses appeared and being duly sworn, testified; and being duly advised, and from the evidence, the court does find that the allegations of the Petition are true, and that the above 4 children are dependent and neglected on account of acts and conduct of the parents; and does further find that for some length of time the said parents have been unable to maintain a home and properly provide for said children, and that said children should be taken from the custody of said parents and placed in proper and suitable homes, and the said parents be restricted from bothering or interfering with such placement;  . . .

"It is Therefore, by the four named children be, and they hereby are, found to be dependent & neglected children; that they be, and they hereby are, made wards of this Court; that they are taken from the custody of Mr. & Mrs. Harold Loveland, parents with whom they are living; that they be placed temporarily with Mrs. Floyd Loveland, # 127 So. State St., Emporia, Kansas, for care and keep, until a further Order of this Court;  . . ."

Ruth Loveland testified at the hearing in the district court on the motion to quash that she was notified to have the children present in court on the 14th day of December, 1954, and that she was

present at such hearing with the children. (These facts are not disputed.)

On the 14th day of July, 1955, Steward M. Reed and his wife by a petition filed in the juvenile court of Lyon County requested permanent custody of Charlene Irene Loveland, aged 20 months, born October 5, 1953, alleging said child to be a dependent, neglected, destitute and abandoned child, dependent upon the public for support, specifying the order of the juvenile court dated December 14, 1954, whereby said child was found to be dependent and neglected, made a ward of the juvenile court, and subject to the further order of the court. Without notice the juvenile court granted the petitioners temporary custody of said child and set the date of hearing on the 26th day of July, 1955. In said order Roy Jordan, a practicing attorney and a member of the Lyon County Bar, was appointed guardian *ad litem* to represent the interests of said minor child at the hearing.

Counsel for the petitioners notified Ruberta Loveland, mother, Harold Loveland, "father," and Mrs. Floyd Loveland, temporary custodian, by mailing a notice of the hearing on permanent custody. The guardian *ad litem* filed a general denial and the journal entry regarding permanent custody of said minor child recites in part:

". . . Petitioners appear in person and by Putnam and Mankin, their attorneys; the said minor child is present in court and by Roy Jordan, her duly appointed Guardian ad Litem. Also appearing in person are Gaylord Nott and Berniece Nott, and by David Heilman, their attorney, of Council Grove, Kansas. Also appearing is Ruberta Loveland, natural Mother of said child. The Court finds that notice hereof has been duly given to the parents of the said minor child and to all persons interested in said proceeding."

The journal entry discloses that the Notts (presumably next of kin within the meaning of G. S. 1949, 38-412) represented by David Heilman (now appearing as counsel for appellants) moved for change of venue which was overruled by the court. The journal entry further recites that the matter was taken under advisement until the 28th day of July, 1955, when the court found in accordance with the allegations of the petition and granted permanent custody to the petitioners.

Appeal was taken from this order granting permanent custody to the district court which affirmed the juvenile court and subsequent thereto appeal was perfected to the Supreme Court. On March 21, 1958, the appeal to the Supreme Court was dismissed.

Thereafter on the 11th day of August, 1955, John F. Brockmueller

and his wife filed a petition in the juvenile court of Lyon County for the permanent custody of Donald Ray Loveland, a minor, a/k/a Harold Eugene Loveland, alleging facts identical with those set forth in the petition regarding Charlene Irene Loveland, a minor, except for the name of the minor child and the fact that he was born on September 10, 1954.

The juvenile court, pursuant to said petition, entered a temporary order on the 11th day of August, 1955, granting the Brockmuellers temporary custody of said minor child and appointed Roy Jordan guardian *ad litem* to represent the interest of said minor child. The hearing was set for the 12th day of August. The guardian *ad litem* answered by denying generally the allegations of the petition. The sheriff's office made residence service upon Harold Loveland and personal service upon Ruberta Loveland.

Apparently a continuance was granted to the 7th day of September, 1955. The journal entry regarding permanent custody of said minor child recites in part:

"On this 7th day of September, 1955, comes on for hearing the petition of John Brockmueller and Gladys Brockmueller, for custody of Donald Ray Loveland, a/k/a Harold Eugene Loveland. Petitioners appear by James W. Putnam and Richard Mankin, of Putnam and Mankin, their attorneys. The said minor child appears by Roy U. Jordan, his duly appointed guardian *ad litem*. Ruberta Loveland and Harold Loveland, natural parents of said minor child, appear in person and by David Heilman, their attorney of Council Grove.

"*Whereupon, the Court grants a request for a conference between the said Ruberta Loveland and Harold Loveland, and their said attorney. Thereafter said parties state in open court that they do not desire to oppose the said petition.*" (Emphasis added.)

The journal entry further recited findings consistent with the allegations in the petition; found the petitioners suitable persons, and granted them permanent custody of said child.

No appeal was taken from this order.

It should be noted that this order was entered more than eight months after the dependent-neglect proceedings conducted on the 14th day of December, 1954, and is almost five months prior to the time when the motion to quash, attacking such proceedings, was filed in the juvenile court on February 1, 1956.

As heretofore indicated the motion to quash, collaterally attacking the December 14, 1954, order of the juvenile court was denied in the juvenile court after hearing. Upon appeal to the district

court a hearing *de novo* was conducted and the juvenile court's rulings, orders, decrees and judgments were sustained, whereupon appeal was duly perfected to this court.

The evidence presented in the district court on the motion to quash has been presented to this court in both an abstract and a counter abstract. Various witnesses testified as to what occurred at the hearing on December 14, 1954. Some of the testimony was inconsistent with recitals in the journal entry, and the testimony of the various witnesses was conflicting. Since the decision of the lower court was adverse to the appellants, a general finding on the facts in favor of the appellees is indicated. (*Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130.) Under these circumstances we are not concerned with such evidence as may tend to support a contrary decision.

Except to indicate the disposition of this appeal, the opinion herein is somewhat academic since the statutes under which these proceedings were conducted ( G. S. 1949, 38-408, *et seq.*) have been repealed and superseded by a new Juvenile Code adopted by the legislature in the 1957 session. (See G. S. 1957 Supp., 38-801, *et seq.*)

We shall first consider several contentions advanced by appellees. A motion to dismiss this appeal has been filed by appellees on the ground G. S. 1949, 60-3306, requires that a copy of the notice of appeal "must be personally served on all adverse parties whose rights are sought to be affected by the appeal, *and who appeared and took part in the trial,* or their attorneys of record." (Emphasis added.) It is shown that no notice of this appeal was served on John Brockmueller and his wife. But John Brockmueller took no part in the trial before the juvenile court concerning the dependent-neglect proceeding. It was strictly a proceeding in which the state was a party proceeding in the exercise of its parental power and making inquiry concerning the welfare and best interests of the minor children of Ruberta Loveland and Harold Loveland. The fact that permanent custodians later became interested in the children does not make them parties to the original proceeding which is being collaterally attacked. This motion to dismiss, therefore, is without merit.

The appellees further move this court to dismiss the appeal as to Charlene Irene Loveland and Harold Eugene Loveland on the ground that all questions presented as to them are moot. This is

based upon proceedings wherein permanent custody of these two children was determined by the juvenile court of Lyon County, Kansas, subsequent to the December 14, 1954, judgment. If appellants should not prevail upon the collateral attack, this question becomes immaterial. Inasmuch as the motion does not affect all of the children, we presently pass the question.

Was the notice given by the juvenile court sufficient to acquire jurisdiction over the minor children in the dependent-neglect proceeding?

Basically appellants' position in this appeal is founded upon an erroneous theory as to the function of a juvenile court in a dependent-neglect matter.

The provisions of G. S. 1949, 38-401 to 38-415, applicable to the juvenile court and its jurisdiction over dependent, neglected or delinquent children are to be construed in accordance with the provisions of G. S. 1949, 38-415, which read:

"This act shall be liberally construed, to the end that its purposes may be carried out, to wit, *that the care, custody and discipline of a child shall approximate, as nearly as may be, proper parental care;* and in all cases where the same can be properly done, that a child may be placed in an approved family home, by legal adoption or otherwise. And in no case shall any proceedings, order or judgment of the juvenile court, in cases coming within the purview of this act, be deemed or held to import a criminal act on the part of any child; *but all proceedings, orders and judgments shall be deemed to have been taken and done in the exercise of the parental power of the state.*" (Emphasis added.)

Without attempting to summarize all of the foregoing sections of the statutes, the law-making body in its legislative wisdom has by the above section of the statute proscribed the nature of a juvenile proceeding. The action of a juvenile court is deemed to have been taken and done in the exercise of the parental power of the state. These statutes are an assertion upon the part of the state of its right to exercise its power as *parens patriae* for the welfare of such of its minor citizens as are deprived of proper parental control and oversight, and are disposed to go wrong.

The old Spartan theory that the child and the citizen are for the state has been reversed by our civilization. It regards the state as an institution for the good of the child and the citizen, still the state as *parens patriae* may exercise over the child parental care and authority in order that he may receive the highest good from the state and achieve the best results for himself thus guarded and directed in youth. This *is* but a recognition of the duty of the state,

as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed, just in the measure that the law is framed, with wisdom. It is to be carefully administered. Statutes of this kind are *parental* and as such a jury may not be demanded as a matter of constitutional right. (*In re Turner*, 94 Kan. 115, 145 Pac. 871; and see, also, *Richardson v. Browning*, 18 F. 2d 1008.) The history of our law and the statutes are reviewed in the Turner case.

The liberal rule of construction applicable to the act was applied to a petition in the case of *In re Hollis*, 124 Kan. 345, 259 Pac. 793, which held a dependent-neglect proceeding valid on collateral attack in a habeas corpus proceeding.

G. S. 1949, 38-405, reads in part as follows:

"Upon the filing of a petition, *unless the parties shall voluntarily appear or be in court*, a summons shall issue in the name of the state of Kansas, requiring the child and the person having custody and control of the child, or with whom the child may be, to appear with the child at the place and at the time set in the summons, which shall not be later than twenty-four hours after service, unless otherwise directed by the court. The parents of the child, if living and their residence known, or its legal guardian, if one there be, or if there is neither parent nor guardian, or if his or her residence is unknown, then some relative, if there be one, and his or her residence is known, shall be notified of the proceedings; . . . On the return of the summons or other process, or as soon thereafter as may be, the court *shall proceed to hear and dispose of the case in a summary manner and enter final judgment therein; . . .*" (Emphasis added.)

It appears from the journal entry and the testimony of Ruth Loveland that the provisions of the foregoing statute were met in every respect. The state had the same right to bring these children before the juvenile court that their parents had, and, when the children were once there by proper compulsion of either sort of parental authority, the court had jurisdiction to proceed as it did in a summary manner.

Appellants' specific attack regarding notice concerns the failure to make service of summons upon the minor children pursuant to the provisions of G. S. 1949, 60-408.

Compliance with this provision is necessary to acquire jurisdiction of a minor dependent where a civil action is filed against such minor. (*Pierson v. Brenneman*, 171 Kan. 11, 229 P. 2d 1019; *Godsoe v. Harder*, 164 Kan. 86, 187 P. 2d 515; and *Hurd v. Baty*, 149 Kan. 665,

88 P. 2d 1031.) But proceedings in the juvenile court are completely independent of the Code of Civil Procedure and, therefore, compliance with 60-408, *supra,* is not required to give the juvenile court jurisdiction.

Another situation to be distinguished from the dependent-neglect proceedings conducted in the juvenile court is proceedings under the provisions of G. S. 1949, 59-2257, *et seq.* This is illustrated by the case of *Johnson v. Best,* 156 Kan. 668, 135 P. 2d 896, where the court said in syllabus 2:

"The order of a probate court appointing a guardian for the person of a minor, without notice to or consent of the child's mother, and where no issue concerning the mother's fitness is presented or determined in such appointment proceedings, is not binding on the mother and does not impair her right to the custody of her child."

In the opinion at page 671 the court said:

". . . The petition for the appointment of appellant did not confer jurisdiction on the probate court to appoint a guardian over the person of the child which would be binding on the mother, the natural and statutory guardian of her child . . ."

The case of *In re Watson,* 177 Kan. 666, 281 P. 2d 1116, presented a factual case very similar to the situation here presented. There a jurisdictional attack was made regarding an order of a juvenile court in a dependent-neglect proceeding on the ground that notice was not given to the respective fathers of the oldest children previously divorced from the mother of the children, and the court held under the requirements of G. S. 1949, 38-405, that due notice had been given, there being no indication in the record that these fathers were living, or, if living, that their residences were known.

We note that no attack was made in the *Watson* case regarding the constitutionality of the provisions in 38-405, *supra,* and we likewise note that the appellants in the instant case make no attack upon the constitutionality of this statute.

It is also important to note that we are not here confronted with a *habeas corpus* proceeding where the inquiry concerns the custody of minor children, in a court having equity jurisdiction, between two contending parties. Such case is presented in *Paronto v. Armstrong,* 161 Kan. 720, 171 P. 2d 299, where a *probate court,* proceeding under provisions of the Probate Code, appointed a stranger to be the guardian of the person and estate of a minor child whose parents were dead, without requiring notice to anyone and without the appointment of a guardian *ad litem* or the appear-

ance of anyone but the petitioner. In an original proceeding before this court by the next of kin it was said:

". . . In such use of habeas corpus, the legal rights of the contending parties are of no consequence or at most are of but little consequence. The primary and controlling question in such a case always is the present and future welfare of the child. Legal questions presented are considered only as they bear, if at all, upon the question of what disposition of the child is for the child's best interest and this is determined by the court upon all the facts and circumstances disclosed by the evidence . . ." (p. 724.)

Similar language was used in *Loucka v. State Department of Social Welfare*, 163 Kan. 1, 179 P. 2d 791, in an original *habeas corpus* action for custody of a child. There the *juvenile court* had previously found the daughter of the petitioner to be a dependent and neglected child in a hearing which was held without any notice to the petitioner, and without her appearing either in person or by counsel. The decision was not based upon such defects but went to the present and future welfare of the child and granted petitioners' writ.

But see *In re Carter* (1908), 77 Kan. 765, 93 Pac. 584, where a mother brought an original *habeas corpus* proceeding to obtain custody of her nine-year-old daughter. The child was taken in a juvenile court proceeding as a dependent and neglected child without notice to the mother, whose residence was known. In a *Per Curiam* opinion the case was treated as a collateral attack upon the judgment of the juvenile court and the proceedings held void for want of jurisdiction. Thus, adoption proceedings founded thereon were void. The court did, however, go on to consider the welfare of the child and awarded custody to the mother. See, also, *In re Hollis*, 124 Kan. 345, 259 Pac. 793, where a writ was denied in an original *habeas corpus* proceeding collaterally attacking a judgment of the juvenile court in a dependent-neglect proceeding.

Where the question presented is whether a child is being given *proper parental care*, the juvenile court has original exclusive jurisdiction. (*Wilcox v. Fisher*, 163 Kan. 74, 180 P. 2d 283.)

In the instant case appellants contend that no guardian *ad litem* represented the children throughout the entire proceedings.

G. S. 1949, 38-405a, provides:

"In all proceedings in a hearing in the juvenile court concerning a dependent, neglected or delinquent child, as defined by law, the court shall appoint a guardian *ad litem* to represent said child."

This provision was enacted in 1943.

The appointment of a guardian *ad litem* at the time judgment was rendered, in the case of *In re Houser,* 166 Kan. 48, 199 P. 2d 499, and not in time to participate in the hearing to determine whether a child was dependent or neglected, was held to be too late and did not comply with the purpose and intent of the statute. All proceedings and orders were rendered void by this failure. (See, also, *Steinkirchner v. Linscheid,* 164 Kan. 179, 188 P. 2d 960.)

Were the children in the instant case fully represented at the hearing? Though conflicting on this point, the evidence most favorable to the appellees indicates that the children were fully represented. The journal entry recites that O. S. Samuel was appointed to represent the children. Mr. Samuel, an attorney of the Lyon County Bar, was appointed guardian *ad litem* for the children two days prior to the date of the hearing. At the date of the hearing he arrived late, but the first witness was still on the witness stand. Upon his arrival the judge of the juvenile court interrupted the proceeding and summarized in open court what had been said by the witness prior to the entry of Mr. Samuel. The guardian *ad litem,* Mr. Samuel, cross-examined the first witness.

It further appears from the testimony that the judge of the juvenile court, while waiting for Mr. Samuel to arrive, appointed Kenneth E. Peery, another attorney of the Lyon County Bar, to serve as guardian *ad litem* until Mr. Samuel arrived. The appellants had informed the judge of the juvenile court that they were not represented by counsel and could not afford one. Mr. Peery, at the time of Mr. Samuel's arrival, was then appointed to represent the appellants in the case, there being no objection.

While this procedure cannot be condoned, the irregularity was not sufficient to render the proceedings void. Taking into consideration the nature of the proceeding, which the juvenile court is enjoined to conduct in a summary manner, we are of the opinion that there was substantial compliance with the provisions of 38-405a, *supra.* No objection is made that the guardian *ad litem* represented the children in such manner as to indicate a lack of diligence on his part. Even such charge would be insufficient. (*Huls v. Gafford Lumber & Grain Co.,* 120 Kan. 209, 243 Pac. 306.)

Appellants' contention that they were not given an opportunity to be represented by an attorney of their choosing is without merit. The statutes applicable to this proceeding in 1954 did not require the juvenile court to appoint an attorney to represent the parents, though the new Juvenile Code makes such provision. Here the

parents having left the children for two days, beginning December 6, 1954, returned to find that Ruth Loveland (Mrs. Floyd Loveland) had custody of them by order of the juvenile court and that they were restrained from taking the children or interfering with the custodian. Thus, from December 8th until the hearing on December 14th, written notice having been served upon them on the 13th day of December, they had time to employ counsel of their own choosing had they desired to do so. When they appeared without counsel the court appointed Mr. Peery who was present throughout the hearing, and he represented them before the first witness was cross-examined.

Having considered fully the *questions* specified by counsel for appellants, and finding the errors specified insufficient to warrant a reversal of the trial court, we consider it unnecessary to rule upon appellees' motion to dismiss the appeal concerning the two minor children for whom permanent guardians have been appointed as moot. Doubtless some consideration was given by the trial court to the evidence of proceedings subsequent to the dependent-neglect hearing as bearing upon the credibility of appellants' testimony.

This court, finding substantial evidence to support the general finding and decision of the trial court, and trusting the integrity and wisdom of the juvenile court to exercise and administer the parental power of the state, sustains the jurisdiction which an arm of its judiciary exercised.

The judgment of the trial court is affirmed.