# THE STATE OF NEW JERSEY IN THE INTEREST OF S. I. A JUVENILE, AGE 17.

# THE STATE OF NEW JERSEY IN THE INTEREST OF J. G. A JUVENILE, AGE 16.

Juvenile and Domestic Relations Court
Bergen County

Decided June 23, 1961.

*Mr. Joseph Feder,* appeared for J. G.'s parents.

*Mr. Joseph Stadtmauer,* appeared for S. I. and J. G.

KOLE, J. J. D. R. C. J. G., age 16, has been charged with juvenile delinquency in an amended complaint alleging

that she ran across the state line in the company of S. I., age 17, without the consent of her parents and is pregnant by him. S. I., age 17, has been charged with juvenile delinquency in a complaint alleging that he abducted J., age 16, across the state line without her parents' consent and committed an act of carnal abuse against her. The complaints were filed by J.'s parents after the juveniles had been married in Elkton, Maryland.

S. waived indictment and trial by jury and requested treatment as a juvenile offender. *N. J. S.* 2A:4–15.

I find the following facts:

J. and S. were both residents of this State, each of them residing with their respective parents, until on or about April 14, 1961, when they ran away, without the consent of J.'s parents, to Elkton, Maryland, where they were married on April 15, 1961. Prior thereto and while residents in New Jersey, they had been seeing each other against the wishes of J.'s parents, and had engaged in sexual intercourse in this State, as a result of which J. became pregnant. In view of their ages, neither juvenile could have been legally married in New Jersey without parental consent. *N. J. S. A.* 37:1–6. Immediately after their marriage, they went to Pennsylvania, where they resided with relatives of S. for a short period until they found an apartment nearby. Soon thereafter, after the complaints were filed, they were returned, through the cooperation of the Pennsylvania authorities, to New Jersey and the matter came on for hearing.

S. moved to dismiss both complaints, claiming that this court has no jurisdiction over either him or J. as juvenile delinquents because of their marriage, relying on *In re Olcott*, 141 *N. J. Eq.* 8 (*Ch.* 1947).

I have concluded that the court does have jurisdiction over both these juveniles despite the fact that they may be validly married under the laws of Maryland.

*In re Olcott, supra,* held merely that the juvenile court was without jurisdiction to hear a juvenile delinquency complaint which (1) charged incorrigibility against a 16-year-old

girl, a New Jersey resident, who ran away to New York and married a New York resident without her parents' consent, and (2) was filed by her parents after her marriage and while she was in New Jersey for only a few hours on a temporary errand. Her marriage to the New York resident, the court held, emancipated her from the authority of her parents, and made her as much a New York domiciliary when brought before the juvenile court as if she had always lived in that state. Incorrigibility, the court held, is a type of offense involving a course of conduct evidencing the need of the State, or its agency, the juvenile court, to intervene as *parens patriae*. Since the primary subjects of the State's jurisdiction of this character are children here domiciled, said the court, the New Jersey court had no jurisdiction of a child so charged who was legally domiciled in New York.

There is no need to determine whether *Olcott* should be followed in this case, since it is clearly distinguishable.

There may be some question, however, of the desirability of importing into the juvenile court statute the concept of a married woman's domicile and applying it to a juvenile who would be a New Jersey domiciliary but for a marriage which could not have legally taken place in New Jersey. Whether the legislative philosophy is served by removing such a juvenile from the protection, guidance and control afforded by our juvenile court act might well be subject to re-examination when the appropriate case arises. It should be noted that the statute itself contains no express provision which would exclude jurisdiction in such a case; that it defines juvenile delinquency as the commission of certain acts "by a child under 18 years of age"; that it is the age, not the marital status, of the child that determines jurisdiction; and that the State and the court are interested in protecting any child under 18 within the jurisdiction of the statute to the end that the child receive "such care, guidance and control * * * as will conduce to the child's welfare and the best interests of the state." *N. J. S.*

2A:4–2; 2A:4–14. One of the matters to be considered in this connection is whether the Legislature could have intended to leave New Jersey parents or the State powerless to act to protect the welfare of a young girl who has broken away from parental control and married against her parents' wishes, merely because under the technical rules of domicile, upon such marriage, she acquired an out-of-state domicile. Another consideration is whether such misbehavior by juveniles might be encouraged by an interpretation which would make it impervious to legal control by the State or the parents, and would leave annulment as the only avenue of relief and then only if one of the juveniles seeks such a remedy. *Cf. Wilkins v. Zelikowski,* 26 *N. J.* 370 (1958).

In any event, *In re Olcott* is distinguishable from, and inapplicable to, the instant case for the following reasons:

1. *Olcott* dealt only with a charge of incorrigibility and specifically indicated that the court would have jurisdiction over any juvenile, no matter where domiciled, who committed an offense in New Jersey which would constitute a crime if committed by an adult.

The complaint involving S. charged that he abducted J., age 16, across the state line without her parents' consent and committed an act of carnal abuse against her. This would charge one or more criminal offenses if S. were an adult. *N. J. S.* 2A:86–3; *State v. Catalano,* 30 *N. J. Super.* 343, 346–347 (*App. Div.* 1954). The proofs submitted at the hearing sustained the charges. The acts of sexual intercourse with J. occurred in New Jersey. Hence, there is no question that the court has jurisdiction over S.

The complaint involving J. charged that she ran across the state line without her parents' consent and is pregnant by S. The proofs sustained the charge and also that she engaged in sexual intercourse with S. in New Jersey resulting in her pregnancy here. The pregnancy portion of the complaint, of course, involves unlawful sexual intercourse, which, if committed by an adult, is a crime.

*State v. Catalano, supra.* Thus, there is no question of jurisdiction over J. with respect to that part of the charge in the complaint.

2. *Olcott* involved a New Jersey girl who ran away and married a New York resident and thus technically became a New York domiciliary. In the instant case both juveniles were domiciled in New Jersey until they ran away to Maryland and were married there. Since S. was then a New Jersey resident, J.'s New Jersey domicile did not change by reason of the marriage. Moreover, I am convinced from the proofs, and so find, that both juveniles never abandoned their intent to return to New Jersey as their permanent residence after the problems with J.'s parents had been settled, and that their residence in Pennsylvania was merely a temporary abode.

Accordingly, even to the extent that the complaint involving J. charges incorrigibility, *Olcott* would not bar jurisdiction over her, since she at all times remained legally domiciled in New Jersey and her welfare continued to be the concern of this State.

3. *Olcott* did not hold that marriage alone deprived the juvenile court of jurisdiction over a complaint charging incorrigibility because the girl thereby became emancipated. It was concerned only with the alleged incorrigible juvenile's change of domicile by reason of her marriage to a nonresident and, therefore, with New Jersey's stated lack of interest in such a juvenile no longer legally domiciled here.

The almost universal rule is that the juvenile court has jurisdiction over a child under the maximum statutory age who commits a delinquency offense even if the child is married. Annotation, "Marriage Affecting Jurisdiction of Juvenile Court Over Delinquent or Dependent," 14 *A. L. R. 2d* 336; *Richardson v. Browning,* 57 *App. D. C.* 186, 18 *F. 2d* 1008 (*D. C. Cir.* 1927); *Ex parte Packer,* 136 *Or.* 159, 298 *P.* 234, 235 (*Or. Sup. Ct.* 1931); *Ex parte Drye,* 250 *Mich.* 210, 229 *N. W.* 623 (*Mich. Sup. Ct.* 1930); *State ex rel. Foot v. District Court,* 77 *Mont.* 290, 250 *P.* 973

(*Mont. Sup. Ct.* 1926); *Killian v. Burnham,* 191 *Okl.* 238, 130 *P. 2d* 538 (*Okla. Sup. Ct.* 1942); *Williams v. State,* 219 *S. W. 2d* 509 (*Tex. Ct. Civ. App.* 1949); *State v. Cronin,* 220 *La.* 233, 56 *So. 2d* 242 (*La. Sup. Ct.* 1951); *In re Palumbo,* 172 *Misc.* 55, 14 *N. Y. S. 2d* 329 (*Dom. Rel. Ct.* 1939); *In re Tana,* 197 *Misc.* 67, 93 *N. Y. S. 2d* 752 (*Dom. Rel. Ct.* 1949).

The basis for this rule has been expressed in *Richardson v. Browning, supra,* where the court said, (18 *F. 2d,* at *p.* 1012):

"Public policy demands her emancipation, upon [her] marriage, in respect to her property * * *. But there is no such reason for her emancipation in matters affecting her moral and physical welfare, and the welfare of the organized society in which she dwells. The government has a right, and it is its duty, to see to it that, while she is of the tender years * * * she shall not live in a life of delinquency."

■ As indicated above, there is nothing in our juvenile court act which would preclude our following this rule; indeed, the unequivocal definition of juvenile delinquency and the underlying philosophy of the statute, in my view, compel its adoption. Accordingly, I hold that the court has jurisdiction over J. and S. and the complaints charging them with juvenile delinquency, despite their marriage and even though such marriage may be considered valid in New Jersey.

■ The marriage appears to be valid in Maryland where it was contracted. It could not have lawfully taken place in New Jersey, since J.'s parents did not consent thereto and she was only 16 years of age. *N. J. S. A.* 37:1–6. There is no doubt that the juveniles were married in Maryland in order to evade this New Jersey statute. Such a marriage may be annulled at the suit of either juvenile in this State, if not confirmed after he or she reaches 18 and if the other statutory requisites for annulment are met, since it offends our strong public policy of protecting children against underage marriages. *Wilkins v. Zelichow-*

*ski, supra.* Until so annulled, however, this court is required to recognize the marriage as valid. If, as indicated, a valid marriage does not oust the court of jurisdiction over these juvenile offenders, certainly a marriage which may be void-able as violative of the State's public policy cannot bar such jurisdiction. *Cf. In re Palumbo,* 172 *Misc.* 55, 14 *N. Y. S.* 2d 329 (*Dom. Rel. Ct.* 1939).

Since I hold that the court has jurisdiction in these cases, S.'s motion to dismiss the complaints is denied.